82 N.J. Super. 499 (1964)
198 A.2d 131
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HAROLD RATUSHNY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1964.
Decided March 9, 1964.
*501 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. H. Douglas Stine, Union County Prosecutor, argued the cause for appellant.
Mr. Leo Kaplowitz argued the cause for respondent.
The opinion of the court was delivered by FREUND, J.A.D.
The State was granted leave to appeal an order of the Union County Court to quash a search warrant *502 and to suppress the evidence obtained in pursuance thereof. It was held below that the facts set forth in the affidavit were insufficient to sustain the issuance of the warrant. The search warrant was issued on the basis of an affidavit made by a lieutenant of county detectives for Union County. The relevant portions of that affidavit read as follows:
"2. I have probable cause to believe and do believe that in and upon certain premises within the City of Rahway, County of Union and State of New Jersey, commonly known as 97 Elm Avenue and more particularly described as a two story red brick front building with upper level of gray clapboard, having cement and brick steps with iron railing leading to two white entrance doors on left side of building. A large picture window with two smaller windows faces the street on first floor with a small window on second floor above it. A driveway on right of premises leads to multiple garage in rear, one Harold Ratushny is presently engaged in certain activities or conduct, with the aid and assistance of others, unknown to your deponent, in violation of the Criminal Laws of the State of New Jersey, more particularly the provisions of N.J.S. 2A:112-3.
3. The deponent believes that there is probable cause for this complaint for the following reasons:
I am a Lieutenant of County Detectives of Union County. I have been assigned to investigate matters pertaining to the conduct of an unlawful bookmaking operations in Union County, New Jersey.
In the course of my investigation, I have observed premises known as 97 Elm Avenue, Rahway on May 16, 1962 after information was given to Chief Frank Englehart on May 11, 1962 that a horse bet was made at Fulton 8-1736, a SNP telephone number. Sgt. Michael Bencivengo informed Chief Englehart on May 11, 1962 that his informer had placed a horse bet over Fulton 8-1736; that the bettor asked for `Harold'; that this telephone is now receiving the horse bets which were originally going to an `Artie' Chrone's phone in Clark Township.
On May 16, 1962, Sgt. William Davis of the Rahway Police informed me that he had suspicions of Ratushny on January 24, 1962 engaging in the unlawful business of bookmaking and put a surveillance on his actions in Rahway; that Ratushny had purchased almost daily the paraphernalia of a bookmaker.
Detective Edward Haines, Union County Detective had the premises known as 97 Elm Ave., Rahway under his surveillance on May 16, 1962, May 23, 1962 and May 24, 1962.
On May 23, 1962, a man entered premises at 10:41 A.M. carrying newspapers. At 3:02 P.M. Michael A. Chrone; automobile registration BGA 108, parked in front of 97 Elm Ave. and male occupant *503 entered those premises. Chrone is suspect also in an unlawful bookmaking operation.
At 3:50 P.M. two men left the premises in company of each other.
As a result of the foregoing information, I believe and have reasons to believe that violation of N.J.S. 2A:112-3 is taking place almost daily except Sunday at 97 Elm Ave., Rahway and that the occupant Harold Ratushny has knowledge of and is participating in this unlawful business of bookmaking. It is my belief that betting slips and betting paraphernalia will be found inside the premises of 97 Elm Ave."
We are in accord with the conclusion of the County Court that the above is insufficient to justify the issuance of a search warrant. As Judge Hopkins pointed out, there are too many facts which should have been set forth, and which could have been set forth without undue burden to the police, which were not. For example, the deponent began observing the premises in question after being told by one official that an officer had told him that some informer had told the officer that he (the informer) had placed a horse bet by calling Fulton 8-1736 and asking for "Harold." Although an affidavit will not be held invalid solely because reasons to believe illegal activity is being carried on are based upon mere hearsay, see Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the multiple hearsay in the instant case is needlessly attenuated. There was nothing to prevent the officer who received the informer's information from submitting his personal affidavit.
More important, there is no representation as to the reliability of the informer. This eliminates any probative utility which might otherwise attach to the information alleged to have been procured from the informer. See United States v. Ramirez, 279 F.2d 712, 715 (2 Cir.), cert. denied 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960); see also Jones v. United States, supra, 362 U.S., at p. 259, 80 S.Ct., at p. 730, 4 L.Ed.2d 697; Cervantes v. United States, 263 F.2d 800, 804, n. 8 (9 Cir. 1959) (dictum); compare State v. Macri, 39 N.J. 250, 258 (1963); State v. Scharfstein, 79 N.J. Super. 236, 241 (App. Div. 1963); State v. Klein, 79 *504 N.J. Super. 559, 566 (App. Div. 1963). Without the requirement of reliability the privacy of our citizens' homes would be vulnerable to the whims of spite-seekers, even when their identity is known to the police. Every such affidavit should contain a good faith representation by the police that there is good reason to believe the statement of the informer, either from past experience or other stated information in their possession. A judge who issues a search warrant should satisfy himself that there is some basis in fact for accepting the word of the informer. The affidavit in the present case falls short of the minimum standards in this regard. We do not imply, however, that an affidavit based solely on an informant's information, even though shown to be reliable, is necessarily sufficient to justify the issuance of a search warrant. State v. Klein, ubi cit., supra.
Defendant had been suspected of bookmaking activities for four months. The premises in question had been under observation for three days. Yet no mention is made in the affidavit that defendant occupied quarters there; that Fulton 8-1736 was his telephone number; that anything illegal took place during the time "a man" who on May 23, 1962 entered the building under surveillance "at 10:41 A.M. carrying newspapers" was on the premises, or indeed that he was with the defendant at all; nor are we told of the nature of the "paraphernalia of a bookmaker" that defendant was seen purchasing daily. There was ample time and opportunity for the authorities concerned to include in the affidavit answers to most, if not all, of these questions. We conclude that the so-called reasons for probable cause stated in the affidavit did not justify the issuance of a search warrant. See State v. Macri, supra, 39 N.J., at pp. 262-263.
There is another reason why the evidence in the instant case would have to be suppressed, and we deem it advisable to discuss this issue for the future guidance of law enforcement officials in this State. The building in question, whose physical aspects were so carefully described in the affidavit, contained four apartments. This fact was not mentioned. It is *505 not surprising, therefore, that the search warrant commands the holder thereof "to enter and search the premises hereinbefore described, serving this warrant and making search in the daytime or in the nighttime, and to take into your possession all personal property, goods, chattels and other objects which may be found in and upon said premises which may be evidential of or related to the above described illegal conduct or activity * * *," without limiting the area of search. A warrant which describes an entire apartment building when cause is shown for searching only one apartment is void. United States v. Hinton, 219 F.2d 324, 326 (7 Cir. 1955). It is void simply because it does not comply with the language of the Fourth Amendment: "* * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added) See also R.R. 3:2A-3. For purposes of particularization separate apartments are the same as separate dwellings. See United States v. Hinton, supra, 219 F.2d, at pp. 325-326; United States v. Barkouskas, 38 F.2d 837, 838 (M.D. Pa. 1930); United States v. Innelli, 286 F. 731, 732-733 (E.D. Pa. 1923).
It is true that several Federal cases have held that so long as the search did not in fact extend beyond that portion of the premises which the defendant actually occupied, a warrant which gave only a general description of the place to be searched would not be invalidated. Such rulings were apparently grounded in the thought that the defendant suffered no prejudice. See, e.g., Sasser v. United States, 227 F.2d 358, 359 (5 Cir. 1955); United States v. Yablonsky, 8 F.2d 318 (S.D.N.Y. 1925); compare United States v. Castle, 213 F. Supp. 52, 56 (D.D.C. 1962).
In our view such an approach overlooks the fundamental thesis of the Fourth Amendment. For, just as an illegal search is not validated by what it turns up, Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), Lustig v. United States, 338 U.S. 74, 80, 69 *506 S.Ct. 1372, 93 L.Ed. 1819 (1948), a warrant faulty by reason of its failure to specify the place to be searched should not be approved because only the premises of the defendant were actually searched in pursuance thereof. The validity of a search warrant depends upon the showing made before the magistrate or judge who issues it. See United States v. Hinton, supra, 219 F.2d, at p. 326. If the protection of the Amendment is measured in retrospect, it is hollow protection indeed. The purpose of interposing a judicial officer between the citizenry and law enforcement officials is to protect from searches everyone except those against whom probable cause has been demonstrated. The intended prophylactic effect is emasculated if a search warrant authorizes, indeed commands, a search of the entire premises where the suspect occupies only a portion thereof. Even if the homes of several innocent persons were searched before the police found the apartment where illegal activities were discovered, the defendant could not show prejudice to his own case, see United States v. Hinton, supra, 219 F.2d, at pp. 326-327; yet the very purpose of the Fourth Amendment would have been frustrated.
We hold that where the premises reasonably believed to house illegal activity are known or reasonably should have been known by the police to be premises being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit. Compare United States v. Santore, 290 F.2d 51, 66-67 (2 Cir. 1960), cert. denied 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961). In many cases this will require a designation of a particular apartment number or location. Where, however, such information is not known, and the police are justified in not inquiring for fear of alerting a suspect, a more general limitation will suffice. If this is the case, the circumstances should be disclosed in the affidavit. Several Federal cases have approved warrants which added to a detailed description of the entire building a phrase such as "the premises occupied by [the defendant] and over which *507 he has possession and control." See United States v. Hinton, supra, 219 F.2d, at p. 326; United States ex rel Sunrise Products Co. v. Epstein, 33 F.2d 982, 984 (E.D.N.Y. 1929); Fry v. United States, 9 F.2d 38, 39 (9 Cir. 1925), cert. denied 270 U.S. 646, 46 S.Ct. 347, 70 L.Ed. 778 (1926). We adopt this standard in such cases where a more specific identification of the particular premises involved is shown to be not practicable. Although such a general description falls short of the particularity most desired, it does indicate to those executing the warrant that they are not at liberty to search every apartment. The authorizing instrument is no longer a license to intrude at whim. Compare Wong Sun v. United States, supra, 371 U.S., at p. 479, 83 S.Ct., at p. 412, 9 L.Ed.2d 441. Once armed with the warrant officers may be able to make inquiry where necessary just prior to entry and before a suspect can flee or destroy evidence. We emphasize, however, that a general description such as that suggested above will pass muster only when it appears that a more specific description could not be obtained without endangering the secrecy of surveillance or the efficacy of an arrest, or there are equivalent justifying circumstances.
The warrant in the instant case, although referring to a belief that the defendant was engaged in illegal activity upon the described premises, failed to delimit in any respect the area to be searched, and indeed failed to indicate that the premises were anything other than a one-family dwelling. The resultant command to search the entire premises rendered the warrant void ab initio and any search made thereunder illegal, irrespective of whether or not the search itself was limited to that portion of the premises actually occupied by the defendant.
The order of the Union County Court quashing the search warrant and suppressing the evidence obtained thereunder is affirmed.