939 A.2d 813 (2008)
398 N.J. Super. 92
STATE of New Jersey, Plaintiff-Respondent
v.
Quinn MARSHALL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 2007.
Decided January 29, 2008.
*815 Eric A. Gang, Designated Counsel, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Gang, on the brief).
Maura K. Tully, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Ms. Tully, of counsel and on the brief).
*816 Appellant filed a pro se supplemental brief.
Before Judges STERN, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
Constitutional principles require that a search warrant issue only upon a finding of probable cause by a neutral and detached magistrate. We find the warrant in question unconstitutional because it issued despite the judge's implicit finding that the place to be searched was not sufficiently described and because the judge thereafter directed the police to ascertain the facts needed to accurately describe the place to be searched without further judicial oversight or review.

I
Defendant was indicted and charged with various drug and weapons offenses. Following a hearing and the denial of his suppression motion, defendant pled guilty to first-degree possession of a controlled dangerous substance (CDS) with the intent to distribute, N.J.S.A. 2C:35-5(a)(1). He was sentenced to a twelve-year prison term with a four-year period of parole ineligibility.
In this appeal, defendant seeks our review of the denial of his motion to suppress as well as the sentence imposed. Because we agree that the search warrant was invalid, we reverse and remand. As a result, we need not reach defendant's arguments regarding the sentence he received.
The charges asserted against defendant emanated from a police investigation of Allen Daniels, who was suspected of distributing CDS in the Trenton area. After conducting several controlled buys, the police had cause to believe that Daniels was operating a drug distribution business out of locations on Hoffman Street and Sanhican Drive in Trenton, and out of an apartment in the Avalon Run Apartments in Lawrence Township. The police obtained warrants to search those premises.
Before executing those warrants, detectives arranged to have a confidential informant meet with Daniels to make another purchase of CDS. The informant contacted Daniels and met him at the Hoffman Avenue location; from there they drove to Wayne Avenue in Trenton. Daniels exited the vehicle and entered 105 Wayne Avenue. Soon thereafter, the officers observed Daniels and an unknown black male walk out of 105 Wayne Avenue, enter the car, and drive away. The informant later advised the police that the other person in the car was Daniels' cousin, defendant Quinn Marshall.
Based on this information, the police applied to a superior court judge for a search warrant. The supporting affidavit averred, however, that "[i]nformation received . . . reveals that there are two separate units inside 105 Wayne Avenue, Trenton," and it was not then known, and could not be learned "through normal surveillance efforts," which of the two apartments was being used by Daniels. Nevertheless, the police "request[ed] that a search warrant be issued for the apartment within the premises of 105 Wayne Avenue to which [Daniels] has possession, custody, control or access as previously described."
Based on this factual presentation, the judge issued a search warrant, which permitted a search of the 105 Wayne Avenue apartment that was in Daniels' "possession, custody, control or access," but "if and only if" probable cause could be established after the police "secured [Daniels] outside 105 Wayne Avenue" and "a *817 search of [Daniels] reveals documentation or keys which identify the specific unit inside 105 Wayne Avenue to which [Daniels] has possession, custody, control, or access, or if he divulges such information to the officers executing the search warrant for his person." The warrant also commanded the police that "[i]n the event [they were] unable to identify the premises utilized by [Daniels] through the above mentioned means, this premises warrant [for 105 Wayne Avenue] will not be executed."
Thereafter, the police executed the previously obtained search warrant on the Avalon Run apartment. There they found Daniels. They advised Daniels of his Miranda[1] rights and questioned him about 105 Wayne Avenue; a police officer later testified at the suppression hearing that Daniels eventually revealed that defendant stayed in the first floor apartment. The officer who interrogated Daniels at the Avalon Run apartment relayed this information to other officers. Those officers then executed the search warrant for 105 Wayne Avenue where defendant, CDS and other incriminating items were found in the first floor apartment.
Defendant was indicted as a result of what was obtained through execution of the warrant in question. He filed a suppression motion and, following an evidentiary hearing that spanned over parts of two days, the trial judge[2] denied the motion. He found, after hearing the testimony of Daniels and the police officer who questioned Daniels prior to the search of 105 Wayne Avenue, that the conditions set forth in the warrant had been met.[3] The trial judge also implicitly rejected defendant's argument that the warrant improperly delegated to the police the issuing judge's obligation to ascertain whether probable cause had been established.

II
The Fourth Amendment to the Constitution of the United States declares that the right of the people to be secure against unreasonable searches and seizures shall not be violated and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, paragraph 7 of our state constitution is practically identical. This constitutional mandate imposes "a firm standard with respect to the essentials of a search warrant." State v. Macri, 39 N.J. 250, 256, 188 A.2d 389 (1963). It commands that the "crucial determination" of whether a search warrant should issue "is to be made not by the police but by a neutral issuing judge" and that "[b]efore the judge is in a position to make his determination for issuance, he must properly be made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated." Id. at 257, 188 A.2d 389. To protect the freedom and privacy of the individual, the constitutional insistence that there be issued a search warrant to invade a citizen's premises in this manner, as Justice Jacobs said for the Court in Macri, "is not a mere formality but is a great constitutional principle embraced by free men." Id. at 255, 188 A.2d 389.
*818 Of course, we do not mean to suggest that there are not exceptions to the warrant requirement. But the process of requiring a law enforcement officer to obtain a warrant is a constitutionally-established preference because it "interposes an orderly procedure," United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951), and requires the examination of law enforcement's factual presentation by a "neutral and detached magistrate," Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). These constitutional principles also require that the application for a search warrant particularly describe the place to be searched so as to "prevent the police officer from entering property which he has no authority to invade." State v. Wright, 61 N.J. 146, 149, 293 A.2d 380 (1972).
At the time a warrant is sought, as we have already observed, the issuing judge must be made aware of the facts and circumstances that would "warrant a prudent man in believing that the law was being violated." Macri, supra, 39 N.J. at 257, 188 A.2d 389. See also Aguilar v. Texas, 378 U.S. 108, 111-12, 84 S.Ct. 1509, 1512-13, 12 L.Ed.2d 723, 726-27 (1964); State v. Petillo, 61 N.J. 165, 173, 293 A.2d 649 (1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). "Critical to [t]his analysis of the underlying facts and circumstances is the issuing judge's evaluation of the credibility of the affiant." State v. Fariello, 71 N.J. 552, 564, 366 A.2d 1313 (1976). See also Petillo, supra, 61 N.J. at 173, 293 A.2d 649; State v. Burrachio, 39 N.J. 272, 274, 188 A.2d 401 (1963).
Whether probable cause has been established must be based upon what is actually presented to the issuing judge. Justice Coleman explained, in speaking for the Court in Schneider v. Simonini, 163 N.J. 336, 363, 749 A.2d 336 (2000), that "[w]hen a search or seizure is made pursuant to a warrant, the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit, as [may be] supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." See also Whiteley v. Warden, Wyo. Penitentiary, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306, 311 n. 8 (1971) (holding that "an otherwise insufficient affidavit cannot be rehabilitated by testimony" at a later suppression hearing "concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate" because "[a] contrary rule would . . . render the warrant requirements of the Fourth Amendment meaningless"); Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.3(a) at 505 (4th ed. 2004) (stating that "permitting an after-the-fact showing of what was `known' to the affiant but yet not communicated to the magistrate contains too great a potential for abuse, for there could often be no assurance that the critical facts and details were in fact known prior to the issuance of the warrant[;] . . . the Fourth Amendment . . . requires more than that a valid warrant could have been obtained"). Our court rules thoroughly circumscribe this process and abundantly demonstrate that it is what actually was presented to the judge prior to the warrant's issuance that governs the validity of the warrant; any insufficiency in the officer's factual presentation cannot be rehabilitated by the later presentation of information that may have been known but not conveyed to the judge. See R. 3:5-3. Because these constitutional and rule-based principles foreclose a demonstration that a warrant was valid because of evidence that the affiant *819 knew but did not tell the issuing judge, they certainly foreclose a determination that the warrant was valid because of facts the affiant learned after the warrant issued.
There is no dispute about what was placed before the judge on the application for the warrant in question. The affiant candidly acknowledged that he knew there were two separate apartments at 105 Wayne Avenue and that he had no knowledge as to which apartment had been utilized by Daniels. We assume from this and the conditions the judge placed on execution of the warrant that the judge was satisfied that probable cause to search 105 Wayne Avenue had not been established. Had he concluded otherwise, the warrant would have issued without a direction that the police obtain additional information regarding the particular location of the search. The judge's view of the worth and credibility of the information provided is entitled to "substantial deference," Aguilar, supra, 378 U.S. at 111, 84 S.Ct. at 1512, 12 L.Ed.2d at 727, and nothing in this record suggests a need to second-guess the issuing judge's determination that the police had failed to establish with particularity the place to be searched. Based upon what was presented at that time, and based upon the issuing judge's implicit determination that the police had failed to identify the particular apartment within 105 Wayne Avenue that was being used by Daniels, the warrant should not have issued. Therefore, the information obtained from the interrogation of Daniels, gathered after the search warrant issued, was constitutionally irrelevant, and so too are the fact findings made by the trial judge at the suppression hearing about the credibility of Daniels and the State's witness.
In this same vein, the process established by the judge in the warrant itselfthat the police thereafter obtain additional information and evaluate it for probable cause before executing the warrant starkly violated the "detached and neutral magistrate" requirement of the Fourth Amendment and Article I, paragraph 7 of our state constitution. Only a neutral judge is permitted to issue a warrant, Coolidge v. New Hampshire, 403 U.S. 443, 450, 91 S.Ct. 2022, 2030-31, 29 L.Ed.2d 564, 573 (1971) (holding that "the whole point of the basic rule . . . is that prosecutors and policemen cannot be asked to maintain the requisite neutrality with regard to their own investigations"), and only after assessing the information contained within the four corners of the affidavit or other sworn information provided at the time of the application, Schneider, supra, 163 N.J. at 363, 749 A.2d 336. Justice Jackson's eloquent summary is worth repeating:
The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement officers the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves *820 into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.
[Johnson, supra, 333 U.S. at 13-14, 68 S.Ct. at 369, 92 L.Ed. at 440 (footnotes omitted).]
These fundamental concepts were breached here when the issuing judge turned his obligation to find the existence of probable cause over to the discretion of the police.
What should have occurred hereto conform the issuance of the warrant to constitutional principleswas for the judge to decline to issue the warrant when the affiant concededly failed to provide sufficient certainty about the identity of the apartment to be searched. Probable cause would have appeared to have been established to search Daniels and the other premises utilized by Daniels and, if what occurred after Daniels was apprehended was accurately stated at the suppression hearing, the police would have then learned of the particular apartment at 105 Wayne Avenue that held their interest. A return to the judge with a new affidavit or, assuming time was an issue,[4] through the presentation to the judge of sworn information through the more expeditious modes permitted by court rule[5] describing in sufficient detail what was learned from their continuing investigation could then have been reviewed by the judge, and the judge could then have determined whether probable cause to search the first floor apartment at 105 Wayne Avenue had been established. If satisfied, the warrant would then have issued, been executed, and the evidence obtained would not have been rendered vulnerable to the exclusionary rule. As is readily apparent, this additional process would have placed no undue burden on law enforcement or on the issuing judge.
The method chosen by the applicant and adopted by the issuing judge may have provided a marginally more expedient process, but it bypassed a crucial constitutional requirement and replaced it with an unconstitutional authorization of the police to make a "hurried" and un-detached determination. Aguilar, supra, 378 U.S. at 110-11, 84 S.Ct. at 1512, 12 L.Ed.2d at 726; Johnson, supra, 333 U.S. at 13-14, 68 S.Ct. at 369, 92 L.Ed. at 440; United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 882 (1932). As a result of the judge's abdication of his duty in this regard, the search in question stood "on no firmer ground than if there had been no warrant at all." Coolidge, supra, 403 U.S. at 453, 91 S.Ct. at 2031, 29 L.Ed.2d at 575.

III
We also consider the State's argument that a warrant, which describes the specific unit of the multiple unit dwelling *821 as "the apartment at 105 Wayne Avenue to which [Daniels] has possession, custody, control or access," is sufficient to pass constitutional muster. Although our disposition of this argument is not required because the issuing judge implicitly rejected the sufficiency of that description when he required additional identifying information prior to the execution of the warrant we offer the following comments to quell any further confusion as to the meaning of the dictum in State v. Ratushny, 82 N.J.Super. 499, 198 A.2d 131 (App.Div. 1964), upon which the State nearly exclusively relies. Our intent is not to declare any firm rules to govern all future similar circumstances but merely to narrow the field of uncertainty suggested by the State's view of Ratushny.
We start with the well-established premise that a single unit in a multiple unit structure is to be treated as if it were a separate residence and, for that reason, constitutional principles insist that the warrant describe "the specific subunit to be searched," State v. Sheehan, 217 N.J.Super. 20, 28, 524 A.2d 1265 (App.Div.1987), and not merely the multiple unit structure itself. For that reason, it is understood that it would be insufficient for a warrant to "describe[ ] the premises only by street number or other identification common to all the subunits located within the structure" unless the probable cause showing justified the search of all units. LaFave, supra, § 4.5(b) at 580. On the other hand, we assume, as did the panel in Ratushny, that the constitutional requirement of particularity in description will ordinarily be metalthough not necessarily so[6]by the warrant's inclusion of the unit number of the apartment to be searched together with a sufficient description of the multiple unit structure. 82 N.J.Super. at 506, 198 A.2d 131. However, as with any other place to be searched, we do not mean to suggest that the police must always assert, and the warrant must always contain, the exact address of the unit to be searched. "[R]easonable accuracy" not "pin-point precision" is required. Wright, supra, 61 N.J. at 149, 293 A.2d 380. As a result, a description that omits the particular apartment number but otherwise defines the location of the apartment within the structure will ordinarily be deemed sufficient. See, e.g., People v. Peppers, 172 Colo. 556, 475 P.2d 337, 339 (1970) (finding adequate the address of the entire structure together with a description of the apartment as "Second Floor apt. first one on the left hand side (SE corner)"). In short, what constitutes a "reasonably accurate" description of a unit within a multiple unit structure is inherently fact-sensitive and must be judged on a case-by-case basis.
Case law to which we are bound demonstrates that the announcement of hard-and-fast rules as to what constitutes a sufficient description is not possible. For example, in Wright, the Court upheld a warrant that permitted a search of the apartment on the "top floor" of a structure. This would ordinarily have been sufficient if there was only one apartment on the top floor of the structure, but two other apartments fit that description. 61 N.J. at 148-49, 293 A.2d 380. Notwithstanding, the Court held that the warrant was not fatally defective because additional elements of the warrant's description were of sufficient definiteness to preclude an *822 indiscriminate search of the other top floor units. Id. at 149, 293 A.2d 380. In other words, the Court found it significant that the warrant's description was sufficiently definite at the time the warrant issued, even though it was later learned to be partially erroneous. See Maryland v. Garrison, 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81 (1987)[7]; State v. Daniels, 46 N.J. 428, 436-38, 217 A.2d 610 (1966); LaFave, supra, § 4.5(a) at 568.
This "practical accuracy" standard, Daniels, supra, 46 N.J. at 437, 217 A.2d 610, is established notwithstanding mistakes in the warrant's description so long as "the officer with a search warrant can with reasonable effort ascertain and identify the place intended," Steele v. United States No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925). In this vein, our Supreme Court held in Daniels that a warrant, which expressly authorized a search for evidence of gambling activities at a candy store at 31 Avon Place was not rendered invalid when other aspects of the warrant's description and the officers' subsequent surveillance demonstrated that the place the warrant actually described was a candy store located at 35 Avon Place. 46 N.J. at 438-39, 217 A.2d 610. See also State v. Bisaccia, 58 N.J. 586, 279 A.2d 675 (1971) (reversing a suppression order where the warrant mistakenly identified the place to be searched as 371 10th Street instead of 375 10th Street, a location which otherwise met the warrant's description). As summarized in Daniels, the description's sufficiency is judged "on a common sense basis rather than upon a super technical basis requiring elaborate specificity." 46 N.J. at 437, 217 A.2d 610. Accordingly, a lack of understanding when the warrant is issued that other units also fit the warrant's description, as in Wright, supra, 61 N.J. at 148-49, 293 A.2d 380, or an unintentional misnomer in the address contained in the warrant, when other aspects of the description adequately described the premises to be searched, as in Daniels, supra, 46 N.J. at 438-39, 217 A.2d 610, is not fatal.
Here, however, no mistake was made. And, unlike the circumstances in Wright and Bisaccia, the officers, at the time the warrant issued, were keenly aware that there were two separate apartments in 105 Wayne Avenue and that they were unable to indicate which of the apartments was involved in criminality. Indeed, the police admirably conceded this in the warrant affidavit, and the issuing judge correctly recognized the lack of a sufficient description by directing the police to continue their investigation in order to ascertain which apartment was being used by Daniels.
The State argues that Ratushny permits in these circumstances a description of the apartment to be searched as simply that which was in Daniels' "possession, custody, control or access." We disagree.
Ratushny's discussion in this regard, which lies at the heart of the State's argument, of course, is dictum because the court concluded that a search warrant should not have issued for a number of *823 other reasons, including the affidavit's omission of "too many facts which should have been set forth," its incorporation of "needlessly attenuated" hearsay, and its omission of information regarding the reliability of the informant. 82 N.J.Super. at 503, 198 A.2d 131. The court also found the warrant invalid because even though the affidavit "carefully described" the building to be searched, it failed to mention that it contained four separate apartments. Id. at 504, 198 A.2d 131. For that reason, the court went on explain what is constitutionally required in that circumstance "for the future guidance of law enforcement officials in this State," id. at 504, 198 A.2d 131:
We hold that where the premises reasonably believed to house illegal activity are known or reasonably should have been known by the police to be premises being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit. In many cases this will require a designation of a particular apartment number or location. Where, however, such information is not known, and the police are justified in not inquiring for fear of alerting a suspect, a more general limitation will suffice. If this is the case, the circumstances should be disclosed in the affidavit. Several [f]ederal cases have approved warrants which added to a detailed description of the entire building a phrase such as "the premises occupied by [the defendant] and over which he has possession and control." We adopt this standard in such cases where a more specific identification of the particular premises involved is shown to be not practicable. Although such a general description falls short of the particularity most desired, it does indicate to those executing the warrant that they are not at liberty to search every apartment. The authorizing instrument is no longer a license to intrude at whim. Once armed with the warrant officers may be able to make inquiry where necessary just prior to entry and before a suspect can flee or destroy evidence. We emphasize, however, that a general description such as that suggested above will pass muster only when it appears that a more specific description could not be obtained without endangering the secrecy of surveillance or the efficacy of an arrest, or there are equivalent justifying circumstances.
[Id. at 506-07, 198 A.2d 131 (citations omitted).]
We need not examine each aspect of this multi-faceted statement, but instead add only the following brief comments.
Certainly, we continue to adhere to the thrust of that part of Ratushny which insists "the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit." Id. at 506, 198 A.2d 131. We view this comment as merely a restatement of what the Supreme Court referred to as "practical accuracy," Daniels, supra, 46 N.J. at 437, 217 A.2d 610 (quoting United States v. Santore, 290 F.2d 51, 67 (2d Cir.1959), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961)). However, the State seeks to persuade us that it is sufficient to generally and not particularly describe one unit in a multiple unit structure by referring only to its relationship to a particular individual. Because, in this case, Daniels' relationship to the first floor apartment was not apparent, such as a mailbox or a sign bearing his name, but was something that required Daniels' interrogation, *824 we reject the State's contention.
Contrary to the broad gloss attributed to Ratushny by the State, its dictum is actually very narrow. The panel there indicated that the general description of an apartment as that "possessed by" or "controlled by" a particular person might be sufficient when the place to be searched is otherwise well-described and when "the police are justified in not inquiring for fear of alerting a suspect." Id. at 506, 198 A.2d 131. Assuming that is an appropriate exception to the particularity required by constitutional principlesa matter we need not presently decideit suffices to say that there was no fear of alerting a suspect here. The police, in fact, conducted the additional investigation required by the issuing judge without any such concern, and allegedly learned the facts missing from the moving affidavit. Accordingly, even if we were to endorse Ratushny's declaration of this exception to the particularity requirement, it would have no application here.
We reject the argument that Ratushny can be read as authorizing the issuance of a warrant that provides no greater detail than a reference to the apartment controlled or possessed by a particular person. A warrant that describes the premises to be searched without enough clarity to preclude an indiscriminate search of other uninvolved units cannot pass constitutional muster. Wright, supra, 61 N.J. at 149, 293 A.2d 380.

IV
We reject the State's arguments in support of the warrant in question.[8] To summarize, the issuing judge implicitly and correctly found that the affidavit's description of the place to be searched was not sufficient and directed the police to detain and search Daniels in order to ascertain the particular apartment in 105 Wayne Avenue to which he allegedly had some connection. The judge erred, however, when he nevertheless issued the warrant and imbued the police with the discretion to determine whether the facts thereafter learned provided probable cause to search a particular apartment; this methodology violated the "neutral and detached magistrate" constitutional requirement. In addition, even though not necessary to our disposition of the appeal, the general description of the place to be searched as "the apartment within the premises of 105 Wayne Avenue to which [Daniels] has possession, custody, control or access," violates the constitutional requirement that a warrant "particularly describe" the premises to be searched.
For these reasons, we reverse the order that denied defendant's motion to suppress and conclude that defendant is entitled to withdraw his guilty plea. We remand the matter for further proceedings in conformity with this opinion.
Reversed. We do not retain jurisdiction.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The trial judge who presided over the suppression hearing was not the same judge who issued the search warrant. The issuing judge, however, sentenced defendant.
[3] We observe that the conditions of the warrant indicated that the officers were to obtain evidence of Daniels' connection to 105 Wayne Avenue, not evidence of defendant's connection to 105 Wayne Avenue before the warrant could be executed.
[4] The affidavit submitted in support of the warrant suggested no relevant time constraints. It revealed that the investigation of Daniels started around August 1, 2004, and continued through September and into October 2004. The warrant for the Hoffman Avenue and Sanhican Drive locations in Trenton, and the Avalon Run location in Lawrence Township, was obtained on October 20, 2004, and the transaction that generated interest in 105 Wayne Avenue occurred on October 21, 2004. The affiant never suggested to the issuing judge that a further delay for an investigation into the apartment in 105 Wayne Avenue that Daniels was using would have damaged the investigation.
[5] R. 3:5-3(b) permits the submission of testimony by an applicant to the judge "by telephone, radio or other means of electronic communication."
[6] In Commonwealth v. Todisco, 363 Mass. 445, 294 N.E.2d 860 (1973), the court considered whether a warrant that directed a search of apartment 3 in a structure that had an apartment 3 on each of its four floors, which would have proven problematic but for other information in the warrant and supporting affidavit that gave greater specificity of the place to be searched.
[7] Similar to Wright is Maryland v. Garrison, where the Court found no fatal flaw in a warrant that authorized a search of an apartment that was described as the third floor apartment, even though it was later learned there were two third floor apartments. The Court cautioned, as is relevant here, that its approval of the warrant in this circumstance was to be distinguished "from a situation" more like the facts here"in which the police know there are two apartments on a certain floor of a building, and have probable cause to believe that drugs are being sold out of that floor, but do not know in which of the two apartments the illegal transactions are taking place." 480 U.S. at 88 n. 13, 107 S.Ct. at 1018 n. 13, 94 L.Ed.2d at 83 n. 13.
[8] We agree with the State that the warrant in question was not an "anticipatory warrant." In other words, this is not a situation where the police were able to demonstrate probable cause to believe that evidence of criminality would be delivered to a particularly described location on a certain future date. See United States v. Grubbs, 547 U.S. 90, 94, 126 S.Ct. 1494, 1498, 164 L.Ed.2d 195, 202 (2006). Defendant's argument to the contrary has insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).