**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2499-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEVIN T. KELLY-PALLANTA,
a/k/a KEVIN KELLY, KEVIN
KELLY-PALLANTA, KEVIN
PALLANTA, KEVIN K.
PALLANTA, KEVIN
KELLYPALLANTA, KEVIN
T. KELLY, KEVIN T.
KELLYPALLANTA, and
KEVIN T. PALLANTA,

    Defendant-Appellant.

_____

Submitted April 27, 2020 – Decided July 15, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 17-12-0892.

Joseph E. Krakora, Public Defender, attorney for appellant (Cody Tyler Mason, Assistant Deputy Public Defender, of counsel and on the briefs).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen Anderson Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized following a search of his residence based on a search warrant, defendant Kevin T. Kelly-Pallanta pleaded guilty to third-degree possession with intent to distribute a controlled dangerous substance, methamphetamine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(9)(b). In accordance with the plea agreement, the court sentenced defendant to a three-year prison term and awarded 438 days of jail credit.

Defendant appeals from the court's October 17, 2017 order denying his motion to suppress the physical evidence seized during the search of his residence, and he also claims the court erred by failing to award three days of jail credit to which he was entitled. Having considered the record and arguments presented in light of the applicable legal principles, we affirm the court's order denying defendant's suppression motion and remand for the court

to consider defendant's claimed entitlement to three additional days of jail credit.

I.

The pertinent facts are not in dispute. On June 5, 2017, Cape May County Prosecutor's Office Detective Maurice Catarcio submitted an affidavit to a Superior Court judge in support of a request for a search warrant for what he described in part as a single-family residence at 217 East 22nd Avenue in North Wildwood. The affidavit included information provided by a confidential informant that defendant was selling methamphetamine and was "known to reside" at that address.

The affidavit explained that during the week of May 29, 2017, the confidential informant called defendant at Detective Catarcio's direction and arranged to purchase methamphetamine. Defendant instructed the informant to travel to his residence at 217 East 22nd Avenue to complete the transaction. At a pre-determined meet location, the informant was searched, was found not to be in possession of any controlled dangerous substances, and was provided money to make the purchase. According to the search warrant affidavit, officers then observed the confidential informant travel to the residence.

A different detective observed the confidential informant approach the residence at 217 East 22nd Avenue and walk to the rear of the residence out of the detective's "line of sight." A short time later, the detective observed the informant walk from the rear of the residence and proceed to a pre-determined location to meet with the detectives.

Upon arriving at the pre-determined location, the confidential informant handed Detective Catarcio an amount of suspected methamphetamine. The informant reported entering the residence through a door located on its north side and purchasing the substance, which a test later confirmed was methamphetamine, from an individual the informant identified as defendant from a New Jersey Division of Motor Vehicle photograph. The affidavit also stated the informant "was under constant surveillance from the time [he or she] traveled from the pre-determined meet location up to the time [he or she]" met with the detectives following the purchase.

Detective Catarcio's affidavit also detailed a second controlled purchase of methamphetamine from defendant at the same residence during the week beginning May 29, 2017. Again, the confidential informant contacted defendant over the telephone, made arrangements to purchase methamphetamine, and was instructed by defendant to travel to his residence

at 217 East 22nd Avenue to make the purchase. Detective Catarcio searched the confidential informant, determined the informant was not in possession of any controlled substances, and gave the informant funds to make the purchase.

The confidential informant was kept under constant surveillance as he or she traveled to the residence. This time, however, the informant "enter[ed] the residence utilizing the front door of the residence." A short time later, the informant left the residence through its front door, returned to a pre-determined location, and turned over suspected methamphetamine he or she said was purchased from defendant "while inside the residence of 217 E[ast] 22nd Avenue."

As explained in Detective Catarcio's affidavit, a search of the confidential informant did not reveal any monies or other controlled dangerous substances. The affidavit further stated the confidential informant "was under constant surveillance from the time" he or she met with the detectives and set up the purchase through the informant's turnover of the substance, which a test confirmed was methamphetamine.

The affidavit further noted that in June 2017, the confidential informant was in the residence, and defendant showed the informant a .45 caliber pistol. The affidavit also included information provided to detectives in March 2013,

5

by a confidential source "with an untested level of reliability" that defendant said: he keeps five or six rifles and shotguns at 217 East 22nd Avenue; he committed a home invasion in another town; he had proceeds from a theft he committed in the attic of his residence; and that defendant asked if the confidential source could help find a buyer for a firearm. The affidavit also reported that a second confidential source stated defendant possessed several firearms.

The affidavit sought a no-knock warrant for the "single family dwelling" located at 217 East 22nd Avenue, and it included a physical description of the exterior of the structure. Based on the affidavit, a Superior Court judge issued a June 5, 2017 search warrant for the residence. The warrant described the structure as a "three . . . story, single family dwelling" and described the entry to residence as being at the top of the stairs in the front of the structure.

On the day following the issuance of the warrant, but before it was executed, Detective Catarcio obtained new information about the residence. As a result, he submitted an amended affidavit to a different judge and sought the issuance of a second search warrant. The affidavit included identical descriptions of the two controlled purchases from defendant made by the confidential informant, as well as the information supplied by the confidential

sources. The affidavit, however, included additional and different information about the physical layout of the building based on the new information Detective Catarcio received.

More particularly, the affidavit explained that on June 6, 2017, North Wildwood Police Department Sergeant McGraw advised Detective Catarcio he had first-hand knowledge of the "building layout" of the residence "from previous law enforcement activity inside the structure." Sergeant McGraw said "there are multiple, vacant apartments located on the first floor," and the "main residence of 217 E[ast] 22nd Avenue . . . does not have access to the multiple apartments located on the first floor."

Detective Catarcio modified the description of the premises for which he sought the search warrant, changing the description of the building from a "single family dwelling" to a "multi-family residence." In pertinent part, the affidavit described the premises to be searched as follows:

> 217 E[ast] 22nd AVENUE, NORTH WILDWOOD,
> NEW JERSEY, is a three (3) story, <u>multi-family
> residence</u> . . . . The exterior of the first level of the
> residence displays tan in color stone. The exterior of
> the second and third level of the residence displays tan
> in color siding. There are multiple rectangular shaped
> windows on the south facing side of the structure. <u>In
> the center, of the south facing side of the structure is a
> set of twelve (12) concrete steps that lead to the
> second floor. Atop the set of steps is the main entry</u>

7

> door that leads to the main residence of the structure. The main entry door is brown in color with large glass panes. Above the main entry door are the numerals "2-1-7." The structure's roof is an A-frame construction with brown shingles. There is a large covered deck area on the second floor of the east facing side of the structure, which is outline [sic] with wooden spindles.
>
> [(Emphasis added).]

A photograph of the residence that was annexed to the affidavit shows the front of the residence facing the street, with twelve steps leading up to a second-floor doorway.[1]

On June 6, 2017, the judge issued a second search warrant for the residence, describing the premises to be searched precisely as detailed in the affidavit. Officers then executed the second search warrant at 217 East 22nd Avenue and searched the main residence.

The record provided on appeal does not include any competent evidence concerning the search that was conducted and yielded the evidence defendant sought to suppress in his motion before the trial court.[2] However, defendant

---

[1] Defendant did not include the photographs referenced in Detective Catarcio's second affidavit in the appendix on appeal. We rely on the photograph included in the State's appendix.

[2] The motion was decided without an evidentiary hearing, and the record does not include any affidavits or certifications based on personal knowledge

relied on a police report detailing the search, and the State did not, and does not, dispute the facts set forth in the report. Defendant also relied on a drawing of the layout of the residence's second floor, which was drawn by one of the officers prior to the search. It showed the second floor consists of a living area, kitchen, and two bedrooms, one of which was labeled the "target bedroom." It also showed stairs leading to an upper floor. We accept those facts and defendant's reliance on the drawing as having been prepared by the police prior to the search because, for purposes of the motion, the parties did not dispute those facts or the accuracy of the drawing.

The report explains that at 6:00 p.m. on June 6, 2017, defendant was arrested pursuant to an outstanding municipal court warrant after he exited the front door of the residence. Almost three hours later, following the issuance of the second search warrant, police officers searched the second and third floors of the residence, and they found controlled dangerous substances and other drug paraphernalia in a third-floor bedroom.[3] The police found another

---

detailing the manner in which the search of the residence following the issuance of the second warrant occurred. See R. 1:6-6.

[3] The police also reported seizing from a second-floor bedroom what is described as a "discovery packet" in the name of a third-party who was not present when the search occurred. There is no evidence in the record

individual within the second and third floor living area and arrested her.[4] That individual signed a written consent to search the first floor of the residence, which was not accessible from the second and third floor living area, but nothing of evidential value was found or seized during the first floor search.

Defendant moved to suppress the evidence.[5] He argued the warrant violated the particularity requirements of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the New Jersey Constitution. He claimed Detective Catarcio's second affidavit did not inform the court that the second and third floors consisted of numerous separately occupied bedrooms and the affidavit failed to identify that a bedroom was "targeted" for the search. Defendant claimed the second and third floors of the residence were not the "main residence" as stated in the search warrant but instead comprised separate residences in "a multiple tenant rooming house."

establishing the third-party's relationship, if any, to defendant or the main residence.

[4] During defendant's plea colloquy, he testified the methamphetamine found in the residence was his and the other individual had no knowledge of it. Based on that testimony, the charges against the other individual were dismissed.

[5] The other individual joined in defendant's suppression motion.

Defendant also asserted he was entitled to a Franks[6] hearing because the search warrant affidavit falsely stated the confidential informant was under constant surveillance by the officers when, in fact, he or she was not under surveillance when he or she traveled to the rear of the residence to make the first controlled purchased and when he or she entered the residence to make the second purchase. Defendant asserted the statements created a false impression for the search warrant judge and, therefore, he was entitled to a Franks hearing.

The court heard argument on the motion and issued a detailed written decision. The court noted defendant did not dispute there was probable cause for the issuance of a search warrant, and, for that reason, the court focused on whether the warrant satisfied the particularity requirement.

The court found "it is arguable that the actual search warrant . . . went beyond the description . . . of the particular place to be searched" described in the affidavit and repeated in the warrant. The court therefore applied the "practical accuracy" standard to determine if the warrant was valid.

The court found that based on all the information available to the officers, they could reasonably ascertain the place to be searched from the

---

[6] See Franks v. Delaware, 438 U.S. 154 (1978).

warrant's description. The court noted the warrant generally described the structure as a multi-family residence, but made no mention of the first floor, and it instead specifically mentioned only the method of access to the second floor and described the area comprising the second and third floor as the "main residence." The court further observed the search warrant affidavit described that the confidential informant entered the front door of the residence and purchased methamphetamine from defendant while inside the residence. The court found that, employing the "practical accuracy" standard, the warrant on its face authorized entry into the main residence and, as such, satisfied the particularity requirement.

The court also found the third floor was part of the main residence for which the warrant was issued. The court explained the search was not invalid simply because the police may have discovered after entering the residence on the second floor that it also included a living area on the third floor.

The court denied defendant's request for a Franks hearing, finding defendant failed to demonstrate the affidavit contained any deliberate or intentional falsehood that the confidential informant was under constant surveillance. The court noted the affidavit disclosed the informant was out of the detectives' view when he or she went to the rear of the residence to make

the first purchase, and the informant entered the residence when he or she made the second purchase. The court also rejected defendant's claim the affidavit misrepresented the second and third floors as the main residence rather than a rooming house, reasoning there was no evidence the second and third floors were comprised of separate and distinct living units.

The court concluded defendant failed to sustain his burden of establishing the warrant was invalid and entered an order denying defendant's suppression motion. As noted, defendant appeals from the court's order.

Defendant makes the following arguments:

> POINT I
>
> THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE BECAUSE THE WARRANT DID NOT SPECIFY THE FLOORS OR UNITS TO BE SEARCHED. ALTERNATIVELY, THE COURT ERRED IN NOT HOLDING AN EVIDENTIARY HEARING, SUCH THAT A REMAND IS REQUIRED.
>
> A. The Warrant Was Invalid Because It Did Not Specify the Floors of the Building to Be Searched and the Affidavit and Affiant's Knowledge Could Not Cure that Deficiency.
>
> B. The Warrant Was Invalid Even If It Limited the Search to the Second and Third Floors Because There Were Multiple, Separate Units on Those Floors.

C.   Alternatively, the Matter Must Be Remanded Because the Court Erred in Not Holding an Evidentiary Hearing.

POINT II

A REMAND IS NEEDED TO AWARD DEFENDANT THREE DAYS OF JAIL CREDIT.

II.

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted). "[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

The Fourth Amendment to the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution require that a search warrant "particularly" describe the place to be searched. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. The purpose of the "particularity requirement [is] to prevent

14

general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications . . . ." State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Maryland v. Garrison, 480 U.S. 79, 84 (1987)).

"The particularity requirement, in general, mandates that a warrant sufficiently describe the place to be searched so 'that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" State v. Feliciano, 224 N.J. 351, 366 (2016) (quoting Marshall, 199 N.J. at 611); see also Steele v. United States, 267 U.S. 498, 503 (1925) (same). Our Supreme Court has characterized the particularity requirement as "uncomplicated," Marshall, 199 N.J. at 611, but its application has presented challenges where a search warrant is sought for a multi-unit structure.

In State v. Ratushny, we found invalid a search warrant that was issued for a building comprised of four separate apartments. 82 N.J. Super. 499, 505 (App. Div. 1964). We determined that "[a] warrant which describes an entire apartment building when cause is shown for searching only one apartment is void" because it violates the particularity requirement. Ibid. We explained that where the police know or reasonably should know that premises for which

a search warrant is sought is "being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit." Id. at 506. Where an apartment number is known, such information should be included in the warrant to identify the particular premises to be searched and, where "such information is not known, . . . a more general limitation will suffice." Ibid.

In State v. Wright, the search warrant affidavit referred to alleged criminal activity occurring on the top floor of a building, but the warrant did not state there were three apartments on the top floor. 61 N.J. 146, 148-49 (1972). The Court issued a search warrant for the top floor, and the defendant, whose apartment was searched pursuant to the warrant, argued the warrant violated the particularity requirement. Id. at 148. The Court disagreed, finding that although "a search warrant must describe the premises to be searched with reasonable accuracy, pin-point precision is not demanded." Id. at 149. The Court concluded the particularity requirement was not violated because the search warrant affidavit stated that the intended apartment was the one occupied by the defendant, and that designation was sufficient under our holding in Ratushny. Ibid. The Court also explained that one of the officers

16

previously searched the defendant's apartment and the officer could take the information gleaned from that search into account in executing the warrant. Ibid.

The search warrants at issue in Ratushny, Wright, and Marshall broadly permitted searches on multi-unit areas without any express identification of the subunit or specific portion of the building for which the search was authorized. Here, the warrant does not suffer from the same infirmity. Defendant's claim the warrant "did not provide any information as to what areas" of the multi-family residence were to be searched is inaccurate. The warrant specifically defined the "[p]remises to be searched" to include the "main residence of the structure," the entry door to which is "[a]top the set of steps" facing the building's south side and which has the numbers "2-1-7" above it. Thus, the warrant included the requisite description of the premises to be searched such that the executing officers "with reasonable effort [could] ascertain and identify the place intended." Marshall, 199 N.J. at 611 (quoting Steele, 267 U.S. at 503). Indeed, if the search warrant was intended to permit an unconstitutional general search of the entire multi-dwelling building, it would have been unnecessary to identify with particularity the main residence

A-2499-18T4

because the affidavit made clear there was no access to the first floor apartments from the main residence.

The description of the main residence as the premises to be searched is also supported by Detective Catarcio's affidavit, which establishes that defendant twice directed the confidential informant to meet him at his residence at 217 East 22nd Avenue to complete the methamphetamine sales, and the detectives' observations of the confidential informant going to the residence on both occasions to complete the transactions. The affidavit further showed the informant was observed by the detectives entering the front door of the main residence to make the second purchase. Following the receipt of the information provided by Sergeant McGraw, the affidavit was amended to reflect three significant facts about the residence. The first floor consisted of vacant apartments, the front door provided access to the main residence, and there was no access between the first floor and the main residence.

A search "warrant must be read realistically in light of the proofs upon which it was issued." State v. Schumann, 156 N.J. Super. 563, 565 (App. Div. 1978). Based on the facts set forth in the affidavit, it could only reasonably be concluded defendant's residence was located through the front door at the top of the steps on the second floor. There was no basis to conclude defendant

resided on the first floor because Sergeant McGraw reported the apartments on that floor were vacant. The affidavit effectively excluded the first floor as a place for which the State sought permission to search because defendant had no access to the first floor from the main residence, and therefore the State complied with the mandate that "the affidavit in support of the search warrant must exclude those units for which police do not have probable cause." Marshall, 199 N.J. at 611. Unlike in Marshall, where the Court noted the search warrant affidavit showed the police did not know which of two apartments in a building that criminal activity took place, 199 N.J. at 613, here, the affidavit precisely defined the main residence where, based on all the information presented, defendant resided.

Given all those circumstances, and when considered in context, the reference in the search warrant to the "three (3) story, multi-family residence" constituted only a general description of the structure and did not define the premises for which the search was authorized. The warrant expressly uses the description to define only what the structure "is," and the specific location for which the search warrant was sought—defendant's residence—is described with particularity.

That the plain language of the warrant permitted only a search of the main residence, and did not authorize a search of the first floor, is borne out by the fact the officers searched only the area the warrant described as the main residence. The officers recognized the warrant did not authorize a search of the first floor; instead, they requested and obtained consent to search the first floor from the individual who was found in the main residence when the warrant was executed. We recognize the conduct of the police during the execution of a warrant cannot establish its validity, see, e.g., State v. Sheehan, 217 N.J. Super. 20, 24 (App. Div. 1987) ("As a general rule, questions concerning the validity of a search warrant hinge upon the information contained within the four corners of the supporting affidavit."), but the actions of the officers in the warrant's execution confirm that a plain reading of the warrant permitted only a search of the main residence and no other part of the structure.

In Marshall, the Supreme Court recognized "the unquestioned proposition that, in describing a place to be searched . . . , '"reasonable accuracy" not "pin-point precision" is required.'" 199 N.J. at 623 (citations omitted). The sufficiency of a warrant's description "'is judged "on a

common[-]sense basis rather than upon a super technical basis requiring elaborate specificity."'" Ibid. (citations omitted).

Defendant's claim the warrant broadly authorized a search of the entire structure and did not particularly describe the place to be searched ignores the warrant's plain language and is inconsistent with a common-sense interpretation of the warrant based on the circumstances presented. "A warrant may not be condemned upon some hypothetical set of facts, foreign to the evident intent of the officers who sought the warrant and the magistrate who issued it." State v. De Simone, 60 N.J. 319, 325-26 (1972). The warrant permitted only the search of the main residence, which was described with more than sufficient detail to satisfy the particularity requirement. We therefore reject defendant's claim the warrant was invalid based on any alleged deficiency in describing the particular place to be searched.

We also find no merit in defendant's claim the warrant was constitutionally deficient because it did not define the particular rooms or floors within the main residence for which the search was authorized. Defendant argues the area comprising the main residence included multiple living units and, as a result, to satisfy the particularity requirement the warrant should have identified the "specific unit" within the main residence to be

searched. There is no support in the record for this contention. The fact that a police drawing revealed two bedrooms in the main residence did not establish the presence of separate residential units within the main residence. See Sheehan, 217 N.J. Super. at 29 (explaining "[t]he mere fact that a structure contains several residents who are not related to one another 'does not automatically convert its rooms into [separate and private] "subunits"'" (citation omitted)). At most, the drawing suggested only that there might be multiple occupants in the main residence.

As we explained in Sheehan, "[t]he 'essential ingredient' regarding the specificity requirement for search warrants . . . 'relates not to the number of occupants but to the existence of separate units or subunits within a structure.'" Ibid. (citation omitted). "In the community living or multiple-occupancy situation, the courts have generally held that a 'warrant describing the entire [dwelling unit] so occupied is valid and will justify a search of the entire premises.'" Ibid. (citation omitted).

Here, there is no evidence the main residence contained separate dwelling units, and a police drawing showing the residence had two bedrooms, with a shared living room and kitchen, does not demonstrate otherwise. Defendant did not make any showing the bedroom on the third floor, where the

seized evidence was found, constituted "an independent living unit, separately locked, or otherwise identifiable as a private space." Id. at 31.

The evidence was seized within the main residence as described in Detective Catarcio's affidavit, depicted in the police officer's drawing, and defined with particularity in the search warrant.[7] We discern no basis to conclude there were separate living units within the main residence, and we reject defendant's claim the warrant was invalid because it did not identify with particularity the precise location within the main residence where the evidence was found.[8] For the reasons noted, the warrant's authorization of a search of the main residence satisfied the particularity requirement.

We find defendant's arguments the court erred by rejecting his request for an evidentiary hearing or for a Franks hearing to be without sufficient merit

---

[7] We note the drawing showed stairs leading from the first floor of the main residence to the floor above.

[8] Because we find there is no evidence the main residence consisted of separate living units, it is unnecessary that we decide whether the search was otherwise lawful because the alleged "multiple-unit character of the premises [was] not known or [was] not reasonably apparent to the officer[s] applying for and executing the warrant." Sheehan, 217 N.J. Super. at 28 n.1; see also Garrison, 480 U.S. at 85 (observing officers would be required to further particularize the request for a search of a structure's third floor "if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor"); see also Wright, 61 N.J. at 149; Ratushny, 82 N.J. Super. at 506.

A-2499-18T4

to warrant discussion, R. 2:11-3(e)(2), beyond the following brief comments. Defendant's claim is founded on the contention Detective Catarcio's affidavit falsely asserted the two floors comprising the main residence were a single "main residence." For the reasons we have explained, there is no evidence the descriptions of the structure or the main residence are either inaccurate or false or omitted material facts known to Detective Catarcio. See State v. Marshall, 148 N.J. 89, 193 (1997) (explaining the Franks standard applies to false statements as well as the omission of material facts from a search warrant affidavit). To warrant a Franks hearing, a defendant must make a "substantial preliminary showing" that the detective deliberately or with reckless disregard for the truth made a false statement, Franks, 438 U.S. at 170, or "failed to apprise the issuing judge of material information which, had it been included in the affidavit, would have militated against issuance of the search warrant," Sheehan, 217 N.J. Super. at 25. Defendant made no such showing here.

Defendant's claimed entitlement to an evidentiary hearing suffers from similar infirmities. An evidentiary hearing is required only if there are material facts in dispute. R. 3:5-7(c). Defendant argues he presented information demonstrating that the two floors comprising the main residence were shared by a number of residents. The State does not dispute that the

24

search revealed that the main residence appeared to consist of bedrooms that may have been used by different occupants sharing the main residence's common living spaces. We agree with the trial court that any such information, which was discovered after the warrant was executed, is not material to whether the warrant satisfied the particularity requirement. That is because there is no evidence there were separate living units within the main residence, and the mere presence of more than one bedroom in the main residence did not require that the court identify with particularity each room within the main residence that could be searched. Sheehan, 217 N.J. Super. at 29. Lacking any material factual dispute concerning the warrant's validity, the court correctly denied defendant's request for an evidentiary hearing.

## III.

Defendant also argues the court erred in calculating jail credits at sentencing. More particularly, he asserts he is entitled to three additional days of jail credit because, following his arrest on the drug charges that resulted in his conviction in this matter, he was incarcerated from August 21 to 23, 2017 "following a contempt charge." He contends he is therefore entitled to jail credit for those days of incarceration under Rule 3:21-8(a) and the principles explained by the Supreme Court in State v. Hernandez, 208 N.J. 24, 28 (2011).

The State does not dispute defendant's entitlement to jail credits for time spent incarcerated on other charges following his arrest on the charges in this matter. The State, however, argues the records provided by defendant in support of his claim for the jail credit do not disclose whether he was incarcerated on a contempt charge during the three-day period or he was serving a sentence for contempt during that time. The State correctly notes that if it was the former defendant is entitled to three days of jail credits, but if it was the latter, he is not. See Hernandez, 208 N.J. at 47-48.

We agree with the State that the records related to defendant's incarceration from August 21 to 23, 2017, that are included in the record on appeal, do not permit a determination of whether defendant is entitled to the claimed three days of jail credit. No request for the claimed jail credit was made at sentencing, and, in our view, the request should be first addressed by the sentencing court. We do not express any opinion on defendant's entitlement to the requested credit, and we remand for the court to address the issue on a more complete record.

Affirmed and remanded for the limited purpose of allowing the court to determine defendant's entitlement, if any, to three-days jail credit from August 21 to 23, 2017. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2499-18T4