IN THE MATTER OF THE REVISION OF RATES FILED BY PRINCETON WATER COMPANY INCREASING ITS RATES FOR WATER SERVICE.

Reargued May 22, 1972—Decided July 14, 1972.

*Mr. John R. Sailer* argued the cause for the appellant Princeton Water Company (*Messrs. Sailer, Fleming & Raczkowski,* attorneys).

*Mr. William Gural,* Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

PER CURIAM. The Princeton Water Company was granted a rate increase by the Board of Public Utility Commissioners but appealed to the Appellate Division, contending that the 7.39% overall rate of return which the Board had allowed was inadequate. The Appellate Division sustained the Board's action and since we agree essentially with the findings of the Board and the Division and with the principles expressed by them, we affirm.

The Princeton Water Company is a subsidiary of the Elizabethtown Water Company which as of December 31, 1969 owned 99.74% of Princeton's stock. Princeton was acquired by Elizabethtown in 1963 and the last rate increase granted to Princeton was in 1964. At that time Princeton was allowed a rate of return of 6.1% on a rate base of $1,761,265. On its current application which was filed on February 9, 1970, its rate base was fixed at $2,646,055 and that figure was not questioned by Princeton before the Ap-

pellate Division. The main thrust of its argument before the Appellate Division was that the 7.39% rate of return was insufficient to enable it to maintain its credit and attract capital. It asserted that it was desirous of converting its $1,250,000 short-term indebtedness into long-term bond obligations which lending institutions would not accept without a showing that the company's net income was at least twice the amount of the interest. The Appellate Division stressed that Princeton's application for rate increase was filed "at a time when interest rates were at an historic high" and that there was a substantial decrease subsequent to the hearing before the Board. However, beyond that it appears to us that the requirements of bond purchasers should be reflected in an appropriate ratio between the stockholders' equity investment and the utility's bonded indebtedness and that it would be improper for the Board to fix the rate of return on the basis of affording operating income at least twice the interest payable on the indebtedness. By virtue of the excess over the actual interest on the indebtedness the stockholders would receive a windfall and, indeed, as the indebtedness and the rate of interest increased the windfall would correspondingly increase; that all this would be contrary to the public interest and sound rate regulation need not be belabored here.

The Appellate Division found that, while the Board had not set forth the calculations by which it had reached the 7.39% rate of return, the rate was "within the general area of rates of return allowed other water companies during 1970," and it concluded that the rate had "not been shown to be inadequate, or insufficient to enable Princeton to fund its short-term bank loans." After oral argument we remanded the matter to the Board with direction that it set forth the reasoning underlying its determination that 7.39% was a fair rate of return. The Board conducted a further hearing during which it introduced testimony by Dr. Schoenwald, an Associate Professor of Business Administration at Rutgers University, in support of its action. Since he was not

a member of the Board's staff and had no part in its original determination his testimony was not pertinent to the remand. However, the Board did prepare, pursuant to the remand, an appropriate supplemental opinion and statement which set forth the mathematical computations and the reasoning supporting its finding as to the fair rate of return. This was followed by reargument and by an informal conference which was attended by the Court and counsel, along with Dr. Schoenwald and an expert staff member of the Board and an expert engaged by Princeton. At the conference even the utility's expert appeared to have acquiesced in the view, heretofore set forth, that rate of return is not to be fixed on the basis of affording operating income at least twice the interest charges on indebtedness.

The Board's computations included a finding as to the cost of debt which was somewhat lower than that proposed by the utility but no error in this regard is pressed before us. With respect to the cost of equity the Board separated it into three categories, namely, (1) Princeton's capital stock outstanding of $549,000; (2) its retained earnings as of December 31, 1962 of $259,429; and (3) its additional retained earnings of $319,665, for a total equity of $1,128,094. As to the first and second categories it applied the overall rate of return which was allowed to Elizabethtown in a 1968 proceeding by Elizabethtown for a rate increase to itself; in that proceeding Elizabethtown asked for and received a 6.85% rate of return. As to the third category it applied a 9.24% rate of return; this was arrived at by taking the 9.37% return on equity which was allowed to Elizabethtown in the 1968 proceeding and applying it to the percentage of Princeton's stock then owned by Elizabethtown. On the basis of the foregoing the Board arrived at a weighted cost of equity, now contested by the utility which rests its attack primarily on its contention that the Board erred in imputing the parent Elizabethtown's rate of return to its subsidiary Princeton.

We find no reversible error in the Board's treatment of the matter. It reasonably viewed the operation as in substance a single one and it fairly considered that the parent's investment in its subsidiary was to be related to the ratio of equity to debt in the parent. In other words, the parent would not be permitted to say that in financing its subsidiary it was using equity funds rather than debt funds which it had obtained at a lesser cost. When in 1968 Elizabethtown sought and obtained an overall return of 6.85% on its own utility plant, the Board could infer that the same rate of return would fairly be applicable to its investment in Princeton. It is true that Elizabethtown's application was made in 1968 whereas Princeton's application was not made until 1970, but the record does not indicate material changes in the interim and further corrective application is of course always available. In differentiating the additional retained earnings from other investment the Board apparently viewed them as representing equity funds solely and applied the return on equity allowed to Elizabethtown in the 1968 proceeding; admittedly this differentiation did not operate to the utility's prejudice.

Rate-making is troublesome enough without being confronted with the problems presented by separate parent and subsidiary applications for rate increases. It would seem that where the subsidiary is substantially wholly owned there should be, in the absence of a showing of unfairness, a consolidated approach and rates based on the entire scene. This would avoid any issue as to whether the funds invested by the parent in the subsidiary represented debt or equity and would obviate the suggestion that customers of the parent might somehow be prejudiced by the parent's use of its credit to obtain funds for its subsidiary. The subject has not been presented to us by the parties in any considered fashion and we of course make no final determination with respect thereto. It should be explored and dealt with by

the Board pursuant to the very broad powers which the Legislature has delegated to it.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN.—7.

*For reversal*—None.