156 N.J. Super. 563 (1978)
384 A.2d 201
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RICHARD CARL SCHUMANN, JEAN LANG, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 1978.
Decided January 20, 1978.
*564 Before Judges HALPERN, LARNER and KING.
Mr. Simon L. Rosenbach, Assistant Prosecutor, argued the cause for appellant (Mr. Stephen R. Champi, Prosecutor of Somerset County, attorney; Mr. Simon L. Rosenbach, Assistant Prosecutor, on the brief).
Mr. George F. Baier, Jr., argued the cause for respondents.
The opinion of the court was delivered by HALPERN, P.J.A.D.
The State appeals, pursuant to leave of this court, from an order granting the motion of defendants Richard Carl Schumann and Jean Lang to suppress evidence of illegal drug activity seized by the police under authority of a search warrant. The search warrant was issued by the same judge who subsequently suppressed the evidence seized. True copies of the affidavit made by County Detective Michael Buchinski to obtain the warrant, the warrant and Buchinski's return of the warrant are annexed hereto as an appendix.
The sole issue presented is the legal sufficiency of Buchinski's affidavit and the search warrant issued thereon. The trial judge, relying primarily upon the decision in State v. Ratushny, 82 N.J. Super. 499 (App. Div. 1964), held the search invalid because the warrant was overbroad in its scope in that numerous unrelated individuals, other than the suspect Carl Schumann, a brother of defendant Richard, lived in the premises to be searched.[1] We are here involved *565 with the illegal drugs seized by the police in a room occupied by defendants in the large one-family dwelling authorized to be searched under the warrant.
When a challenged search is made under the authority of a search warrant, the warrant is preferentially treated and is presumed valid, and will be sustained if there is a substantial basis for the trial judge to conclude that illegal activity is taking place. The burden of going forward with proof of the warrant's alleged invalidity rests upon the defendant. Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Mark, 46 N.J. 262, 273 (1966); State v. Whittington, 142 N.J. Super. 45, 52 (App. Div. 1976); State v. Brown, 132 N.J. Super. 180, 185 (App. Div. 1975); State v. Wright, 113 N.J. Super. 79, 82 (App. Div. 1971), certif. den. 58 N.J. 164 (1971); State v. Gaudiosi, 97 N.J. Super. 565, 571 (App. Div. 1967); 8A Moore, Federal Practice (2 ed. 1977), par. 41-09 [4] at 41-149. The warrant must be read realistically in light of the proofs upon which it was issued. State v. DeSimone, 60 N.J. 319, 324-326 (1972). It need only describe the premises to be searched with reasonable accuracy, and pinpoint precision is not required. State v. Wright, 61 N.J. 141, 148-149 (1972); State v. Bisaccia, 58 N.J. 586 (1971). The resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684 (1965); State v. Perry, 59 N.J. 383, 393-394 (1971); State v. Mark, supra. In State v. Kasabucki, 52 N.J. 110 (1968), the court, in defining the standard to be followed by the trial judge in evaluating whether the affidavits *566 submitted in support of a search warrant established probable cause, said:
When a police officer seeking a search warrant presents the basis therefor in affidavit form to a judge for evaluation on the issue of probable cause, the judge's approach must be a practical and realistic one. The officer's statements must be looked at in a common sense way without a grudging or negative attitude. There must be an awareness that few policemen have legal training and that the material submitted to demonstrate probable cause may not be described with the technical nicety one would expect of a member of the bar. Moreover, the judge should take into account the specialized experience and work-a-day knowledge of policemen. State v. Contursi, 44 N.J. 422, 431 (1965). The facts asserted must be tested by the practical considerations of everyday life on which reasonably prudent and experienced police officers act. [at 117]

* * * * * * * *
[I]n reviewing the legal propriety of a search warrant, substantial deference should be paid to the issuing court's finding of probable cause. The affidavits presented to the court on the application should not be examined with a hypertechnical eye. The approach must be a practical and common sense one. It must be engaged in with a consciousness that bookmaking operations are carried on cautiously, furtively and deceptively, and by as many camouflages as human ingenuity can devise. State v. Contursi, supra, 44 N.J., at p. 431. The consideration cannot be a grudging one. Such an attitude would give no weight to the good faith of the police officer in seeking judicial sanction for the search. Moreover, that attitude would probably result in failure to take into account a significant factor, i.e., the officer's experience with bookmaking activities and the factual indications of them. [at 120]
See also, United States v. Ventresca, supra, 380 U.S. at 108, 85 S.Ct. 741, 13 L.Ed.2d 684; State v. Kurland, 130 N.J. Super. 110, 113 (App. Div. 1974).
Viewed in the light of this common sense, nontechnical and positive approach, we are satisfied that Buchinski's affidavit was sufficient for the judge to find probable cause for the issuance of the search warrant for the entire described dwelling on Rt. 206 in Hillsborough Township; and that he erred in holding the warrant to be overbroad in scope.
State v. Ratushny, supra, relied upon by the judge in suppressing the search is not in conflict with our view; rather, *567 it is supportive of it. In Ratushny the affiant knew that the apartment house to be searched consisted of four separate apartments, occupied by different families who had no connection in any way with the one apartment occupied by defendant. In suppressing the search we said:
We hold that where the premises reasonably believed to house illegal activity are known or reasonably should have been known by the police to be premises being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit.
[82 N.J. Super. at 506]
The significant words are, "as the nature of the circumstances reasonably permit." We there anticipated that instances would arise where it would be impossible to know just where to search, and that further inquiry would be highly unwise. In the instant case it is clear that Carl had told the undisputedly reliable informer that he had access to the entire premises, and that he was continually changing his hiding place for the drugs he was selling in various places throughout the house and outbuildings to avoid detection by the police. It is obvious that any attempt by the informer to pinpoint Carl's hiding place on any given day would have jeopardized the entire police operation.
A similar issue was presented in United States v. Olt, 492 F.2d 910 (6 Cir.1974), where the court dealt with the problem of a warrant authorizing the search of premises containing two apartments, and held:
For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment. If such cause is shown there is no reason for requiring a separate warrant for each resident. A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit. [at 911]
*568 Accordingly, we hold that the warrant issued to search the multiple-occupied structure here involved, where no specific designated sub-unit can be identified, is valid and not contrary to the holding in Ratushny. See Annotation, "Search Warrant: Sufficiency of Description of Apartment or Room to be searched in multiple-occupancy structure," 11 A.L.R.3d 1330, § 7 (1967), and cases cited therein; United States v. Corbett, 518 F.2d 113, 115 (8 Cir.1975); Minovitz v. United States, 112 U.S. App. D.C. 21, 298 F.2d 682, 684 (D.C. Cir.1962); State v. Ellis, 263 S.C. 12, 207 S.E.2d 408 (Sup. Ct. 1974); United States v. Curwood, 338 F. Supp. 1104 (D. Mass. 1972); State v. Hendricks, 145 N.J. Super. 27, 33-34 (App. Div. 1976); Ratushny, supra.
Finally, having held that the warrant was validly issued and executed, it follows that even though defendants were not named in the affidavit or warrant, nevertheless, the search of the room occupied by defendants was proper, and the drugs seized therein may be used as evidence. See United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed. 225 (1974); State v. Smith, 140 N.J. Super. 368 (App. Div. 1976), aff'd 75 N.J. 81 (1977).
The order suppressing the search is reversed.

APPENDIX
 SUPERIOR COURT OF NEW JERSEY
 SOMERSET COUNTY-LAW DIVISION
 CRIMINAL
 AFFIDAVIT FOR SEARCH WARRANT
 STATE OF NEW JERSEY |
 >
 COUNTY OF SOMERSET |
Investigator Michael Buchinski of full age, being duly sworn according to law, upon his oath, deposes and says:
1. I have been employed by the Plainfield Police Department since August 1968, and was a patrolman until June of 1969, at which time, I was assigned to the Vice Section *569 of the Plainfield Police Department. In April of 1970, I achieved the rank of Detective and have continued my assignment in the Vice Section until June 7, 1974. On June 10, 1974, I started to work with the Somerset County Prosecutor's Office as an investigator. My duties in the Vice Section of the Plainfield Police Department and that of the Somerset County Prosecutor's Office, include the investigation of gambling and narcotic offenses in the City of Plainfield and Somerset County, New Jersey.
I have participated in over 500 narcotic investigations and have made over 250 arrests of individuals charged with violations of the New Jersey Controlled Dangerous Substances Act. I am a graduate of the New Jersey State Police Basic Police Training Course in Sea Girt, a three week course in Criminal Investigation and Organized Crime given by the New Jersey State Police, a one week course in Narcotic Investigation given by the New Jersey State Police in Sea Girt, New Jersey. I am also a graduate of a four day course on Advanced Narcotic Investigation given by the New Jersey State Police. I have also attended several narcotic seminars sponsored by the New Jersey State Police, Bureau of Narcotics and Dangerous Drugs, now known as the Drug Enforcement Administration, and seminars given by other law enforcement agencies. I attend Trenton State College pursuing a Bachelor of Science Degree in Law Enforcement. I have testified in County and Municipal Courts approximately 60 times on narcotic cases and have qualified and testified as a narcotic expert in County Courts and in the Plainfield Municipal Court.
2. In the course of my duties as investigator, I have received information that Carl Schumann is engaged in illegal drug activity at the residence located on Route 206, Box 344, in Hillsborough Township, where he and others reside. This illegal drug activity consists of the distribution of cocaine and marijuana. I want to search the person of Carl Schumann and the premises where he and others reside. I want to search the entire residence including all storage *570 space located therein, as well as the property surrounding this dwelling including any out-buildings located thereon.
3. The sources of my information are as follows:
Information received from a confidential reliable informant, hereinafter Informant A, who has been proven reliable in approximately ten (10) narcotic investigations over the past three years. There are approximately four (4) narcotic investigations still pending. Arrests have been made in the remaining six (6) investigations which also relate to the distribution of drugs in Middlesex, Union, and in Somerset County. In these six investigations, there were at least ten arrests made. Over ten pounds of marijuana were seized, as well as smaller quantities of cocaine, T.H.C., "speed," and assorted pills believed to be barbiturates. I would consider Informant A highly reliable and on no occasion have I found that the information supplied to me was not truthful.
I have not actively followed the dispositions of these six investigations mentioned earlier which were culminated in at least ten arrests.
Not included in the above statistics were seven arrests that were made pursuant to the execution of a search warrant on Route 206, Box 344, in Hillsborough Township. These arrests were made as a result of information supplied by Informant A that subsequently resulted in the obtaining of a search warrant. I wish to point out that again Informant A has been proven highly reliable regarding information which Informant A supplied during that investigation in December of 1975, and January of 1976. I was completely satisfied with the information supplied by Informant A during this last investigation at Carl Schumann's resident in Hillsborough Township and again did not find that any information supplied by Informant A was incorrect.
Information obtained by myself during the course of this investigation.
Information provided by Sgt. Genzel of the Hillsborough Township Police Department.
*571 4. The facts upon which I rely in support of this application follow:
A. On Wednesday, March 3, 1976, I received information from Informant A regarding the activities of Carl Schumann which relate to the distribution of marijuana and cocaine from his residence located on Route 206, Box 344, Hillsborough Township.
Informant A stated that the day before (March 2, 1976), during the afternoon hours, he had the occasion of being at Carl Schumann's residence located on Route 206, Box 344, in Hillsborough Township. The purpose of Informant A going to Carl Schumann's residence was so that he could ascertain how much marijuana and cocaine that Carl Schumann had. Informant A was inside Carl Schumann's residence very briefly before they both exited the side door and walked to the swimming pool located just west of the house. On both sides of the swimming pool there are buildings which appear to be a barn or a shed, according to Informant A. While Informant A was outside, he conversed with Carl Schumann regarding drugs. Carl Schumann had indicated previously in the day that he had cocaine and "pot" (marijuana) for sale. So while they were outside near the swimming pool, Informant A observed Carl Schumann enter what appeared to be a shed near the swimming pool and then exit with at least three (3) glassine envelopes measuring approximately 2 x 3 inches. Each of these glassine envelopes contained a white powder. Informant A also observed between two and three pounds of marijuana which Carl Schumann indicated was "Jamaican" (Jamaican marijuana). Carl Schumann also told Informant A that what was in each of the three glassine envelopes was cocaine. The reason that Carl Schumann took these items and showed them to Informant A was because there was someone else present that Carl Schumann was in the process of selling drugs to. While Carl Schumann had the cocaine in the presence of Informant A he permitted Informant A to "snort" (sniff) *572 a small quantity of the cocaine. Upon "snorting" a minute portion of the cocaine, Informant A told Carl Schumann that it did not appear to be good and as a result, did not purchase any. Informant A further stated that he used this as an excuse not to purchase any cocaine. He further added that the effects of what he had just "snorted" was the same as cocaine which Carl Schumann told him that it was.
Informant A also advised me that Carl Schumann was selling "Jamaican pot" for thirty ($30.00) dollars per ounce. Carl Schumann also told Informant A that he was selling cocaine in 1/8's for one hundred and sixty ($160.00) dollars. Informant A was not positive as to the price, but believes that that price was quoted by Carl Schumann. Informant A does not know for a fact that Carl Schumann told him that he was selling cocaine in "1/8's" (1/8 of an ounce).
Before Informant A left from the area of the pool, just west of where Carl Schumann resides, Carl Schumann told him that he has to change his "stash" (hiding place for drugs) quite often because he is fearful that the cops will return with another search warrant and search for drugs. Carl Schumann also told Informant A that he is still hiding drugs inside his home and feels that this time the police will overlook what he has hidden in the house and what he has hidden outside the house. Carl Schumann did not elaborate any further to Informant A where inside his home or bedroom he is hiding his drugs as well as outside.
B. On January 26, 1976, I appeared before the Honorable Arthur S. Meredith, Superior Court Judge of Somerset County and obtained a search warrant for the dwelling at Box 344, Route 206, in Hillsborough Township, New Jersey, as well as the person of Carl Schumann.
This search warrant was executed on January 26, 1976, at approximately 8:00 P.M. and resulted in the seizure of 5.05 grams of amphetamine, 1.47 grams of cocaine, 181.87 grams of marijuana, as well as marijuana seeds and other drugs. Arrested as a result of this investigation were seven (7) persons for a variety of drug offenses. One of these persons was *573 Carl Schumann who was charged with possession of methamphetamine (Speed), and possession of marijuana (Under 25 grams). On March 1, 1976, Carl Schumann was additionally charged with possession of methamphetamine with the intent to distribute as a result of the very same investigation.
When Carl Schumann was arrested on March 1, 1976, for possession of methamphetamine with the intent to distribute, he indicated to the Hillsborough Police that he was still residing on Route 206, Box 344, in Hillsborough Township, New Jersey.
5. The dwelling at Box 344, Route 206, in Hillsborough Township, New Jersey, is described as follows: A white 2 1/2 story Colonial wooden frame dwelling. This residence has a black roof and five brick chimneys; two on the east side and three on the west side. There are also white columns located on the south side of this dwelling. This residence is located approximately two hundred yards off of Route 206. The driveway leading to these premises is a combination of stone and dirt. This description was provided by Detective Payne of the Hillsborough Township Police Department on/or about January 26, 1976.
A. On March 3, 1976, I contacted Sgt. Genzel of the Hillsborough Township Police Department in order to obtain a more detailed description of Carl Schumann than the description that I previously had on the prior investigation. Sgt. Genzel related the following: That Carl Schumann was born in Somerville, New Jersey, on 8/22/56. He is approximately 71 inches in height and weighs approximately 135 pounds. He has brown hair and brown eyes and is employed by Chem-Mark Incorporated, Middlesex, New Jersey.
6. Based upon all of the foregoing and upon my training, education, and experience, I believe that Carl Schumann is engaged in the distribution of controlled dangerous substances from the residence on Route 206, Box 344, in Hillsborough Township, New Jersey, where he resides. I also *574 believe, based upon the facts recited above, that a search of Carl Schumann and the premises where he along with others reside on Route 206, Box 344, in Hillsborough Township, will reveal controlled dangerous substances including but not limited to marijuana and cocaine, scales, cutting materials and equipment, paraphernalia, records and monies used in the distribution of these controlled dangerous substances, and records indicating occupancy or ownership of the said premises.
I am requesting permission to search the entire dwelling which includes numerous bedrooms as well as other rooms inside the residence on Route 206, Box 344, in Hillsborough Township, including all storage space located thereon, as well as the property surrounding this dwelling, including any out-buildings located thereon. The reason that I am requesting this is because Informant A was told by Carl Schumann on March 2, 1976, while at Carl Schumann's residence, that he has to change his "stash" quite often because he is fearful that the cops will return with another search warrant and search for drugs. Carl Schumann did not tell Informant A where specifically he hides his drugs, but Informant A knows that on that date where the drugs were, in fact, hidden. Furthermore, Carl Schumann told Informant A that he is still hiding drugs inside his home and feels that this time the police will not find them.
I feel that attempting to have Informant A ascertain additional information from Carl Schumann regarding where he hides his drugs would definitely reveal who Informant A is.
I also feel, based upon the foregoing and upon my training, education, and expertise, I believe that Carl Schumann has no other alternative but to change the hiding place of his drugs on a daily basis being that he is selling these drugs and is fearful of not only the police but of the people that he sells drugs to because they, in fact, might return and steal these drugs.
*575 7. I intend on executing this search warrant between 2:30 P.M. and 12:00 midnight, and I will be one of the officers present during the execution of this search warrant.
 Michael Buchinski
 Investigator
 Sworn to and subscribed
 before me this 4th day
 of March, 1976.
 ARTHUR S. MEREDITH
 J.S.C.
 SUPERIOR COURT OF NEW JERSEY
 LAW DIVISION-SOMERSET COUNTY
 CRIMINAL
 SEARCH WARRANT
 STATE OF NEW JERSEY |
 > ss
 COUNTY OF SOMERSET |
To Investigator Michael Buchinski any officer of the Somerset County Prosecutor's Office, any officer of the New Jersey State Police or any officer of any Police Department having jurisdiction.
1. This matter being opened to the Court by Inv. Michael Buchinski on application for the issuance for a search warrant for the (X) premises (X) person- ( ) vehicle- described below, and the Court having reviewed the (X) affidavit of ( ) testimony under oath of the said Inv. Michael Buchinski and being satisfied therefrom that located therein or thereon are:
Controlled Dangerous Substances, including, but not limited to Marijuana and Cocaine, scales, cutting materials and equipment, paraphernalia, records and monies used in the distribution of these controlled dangerous substances, and records indicating occupancy and ownership of these said premises.
and that probable cause exists for the issuance of such warrant;
*576 2. You are hereby commanded to search the (X) premises described below (X) person- described below ( ) vehicle-described below and to serve a copy of this warrant on such person or on the person in charge or control of such premises;
3. You are hereby ordered, in the event you seize any of the above described articles, to give a receipt for the property so seized to the person from whom it was taken or in whose possession it was found, or in the absence of such person to leave a copy of this warrant together with such receipt in or upon the said premises from which the property is taken.
4. You are further authorized to execute this warrant within 10 days from the issuance hereof, between the hours of 2:30 P.M. and 12:00 P.M. and thereafter to forthwith make prompt return to me with a written inventory of the property seized hereunder.
5. The following is a description of the (X) premises, (X) person- ( ) vehicle- to be searched:
A. The dwelling at Box 344, Route 206 in Hillsborough Township, New Jersey, is described as follows: A white 2 1/2 Story Colonial, wooden frame dwelling. This residence has a black roof and five brick chimneys; two on the east side and three on the west side. There are also white columns located on the south side of this dwelling. This residence is located approximately two hundred yards off of Route 206. The driveway leading to these premises is a combination of stone and dirt.
B. Carl Schumann is described as follows: A white male, 19 years of age who was born in Somerville, New Jersey, on 8/22/56. Carl Schumann is further described as being approximately 71 inches in height, approximately 135 pounds, having brown hair and eyes. His social security number is XXX-XX-XXXX.
I also wish to search the property at Box 344, Route 206 in Hillsborough Township, New Jersey, as well as all out-buildings located thereon.
6. Given and issued under my hand at Somerville, N.J. at 11:30 o'clock A.M., this fourth day of March, 1976
 ARTHUR S. MEREDITH
 Judge of the Sup. Court.
*577
 SUPERIOR COURT OF NEW JERSEY
 LAW DIVISION-SOMERSET COUNTY
 CRIMINAL ACTION
 RETURN OF SEARCH WARRANT
 STATE OF NEW JERSEY |
 > ss
 COUNTY OF SOMERSET |
 RE: Jean Lang & Richard Schumann
I executed the attached Search Warrant with the assistance of:
 Detective Gardner Investigator Skobo
 Investigator Apisa Investigator Tomas
 Investigator Buchinski Patrolman Mikus
 Investigator Cabrera Detective Scott
 Sgt. Gazaway Sgt. Genzel
 Detective Payne
as follows:
 (X) on March 4, 1976 , I searched the person (X)
 described in the warrant;
 (X) on March 4, 1976 , I searched the premises
 described in the warrant;
 ( ) on , I searched the vehicle
 described in the warrant.
(X) I left a copy of the warrant together with a receipt for the property seized with Jean Lang and Carl Schumann
() I left a copy of the warrant together with a receipt for the property seized at the premises from which the property was seized.
My inventory of the property seized (X) is () are the receipt (X) attached hereto.
 Michael Buchinski
 Sworn and subscribed to Investigator
 before me this 5th day
 of March 1976.
 HONORABLE ARTHUR S. MEREDITH
 J.S.C
 This return made the 5th day of March, 1976
 HONORABLE ARTHUR S. MEREDITH
 J.S.C.
NOTES
[1] The sparse record before us indicates that a very informal hearing, consisting of less than two transcribed pages, was held on defendants' suppression motion. No proofs were submitted or testimony taken, and the judge's decision was predicated on (a) the pleadings and briefs in his possession, and (b) his personal knowledge acquired in a prior suppression motion involving the same premises. Other than what is revealed in Buchinski's affidavit of March 4, 1976, we have no knowledge of that prior case  nor do we know what factual proofs the judge relied on to reach his decision. Nor do we have any factual basis upon which to determine what tenancy relationship existed, if any, between the occupants of the premises in question.