**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5031-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM KING,

     Defendant-Appellant.

_____

Argued January 24, 2019 – Decided May 8, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-06-0382.

Cody T. Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody T. Mason, of counsel and on the briefs).

Paul H. Heinzel, Assistant Prosecutor, argued the cause for respondent (Michael H. Robertson, Somerset County Prosecutor, attorney; Paul H. Heinzel, of counsel and on the brief).

PER CURIAM

Defendant William King appeals from the denial of his motion to suppress evidence seized from his putative part-time residence during execution of a search warrant. Based on our review of the record in light of the applicable legal principles, we affirm.

I.

As a result of a months' long investigation involving surveillance and intercepted telephone and electronic communications, on April 2, 2014, law enforcement officers executed a search warrant at a residence on St. Georges Avenue in Linden that they claimed defendant shared with his girlfriend. During the search, law enforcement officers recovered heroin and a defaced firearm.

Defendant was subsequently charged in an indictment with third-degree conspiracy to distribute a controlled dangerous substance (CDS), N.J.S.A. 2C:5-2 and 2C:35-5(a)(1), -5(b)(3), (b)(5) and/or (b)(13) (count one); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3) (count two); second-degree possession of a firearm (.45 cal. Smith & Wesson) during a drug offense, N.J.S.A. 2C:39-4.1 (count three); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count four); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count five).

Defendant was charged in a separate indictment with one count of second-degree persons not to have weapons, N.J.S.A. 2C:39-7(b).

Defendant moved to suppress the evidence claiming the affidavit supporting the issuance of the search warrant did not establish probable cause to search the residence, the warrant was not sufficiently particular because it incorrectly identified the St. Georges Avenue location as being in Edison and the officers should have ceased the search after discovering the residence contained two residential units, one of which was not defendant's. The court granted defendant's request for a Franks[1] hearing on the validity of the search warrant.

The evidence presented during the hearing showed that a judge issued the warrant for the St. Georges Avenue residence on March 28, 2014, based on the joint affidavit of Somerset County Prosecutor's Office Detective Randy Sidorski and Investigator Vincent Wilson. The affidavit explained that law enforcement officers conducted an investigation of defendant and numerous other identified individuals commencing on March 10, 2014, with the issuance of a warrant authorizing interception of electronic and wire communications, and continuing through the March 28, 2014 search warrant application.

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

A-5031-16T4

The affidavit detailed numerous conversations between defendant and various individuals related to the sale and distribution of CDS and the surveillance of defendant engaging in asserted drug transactions with the individuals with whom he communicated. The conversations and surveillance described occurred on various dates between March 11 and March 26, 2014. The affidavit further explained that in many instances, following defendant's intercepted communications concerning drug transactions, he was observed leaving a residence on Frank Street in Somerset and then meeting with the other participant to the communications to complete the transactions either at or near the Frank Street location.

The affidavit also described an intercepted text communication on March 16, 2014, between defendant and Hamza Namoya, during which they discussed a drug transaction and defendant asked if Namoya would take him "home." Namoya responded, "K u ready now[?]" Defendant replied, "Yea . . . ." Namoya also texted defendant stating, "Am out side," and defendant said, "Comin now." Defendant was observed leaving the Frank Street residence, entering a vehicle and traveling to the St. Georges Avenue residence, where he exited the vehicle and was observed entering the rear of the residence.

A-5031-16T4

The affidavit further detailed that, "[i]n addition to the instances" already mentioned, surveillance officers observed defendant exit the St. Georges Avenue residence "just prior to meeting people in order to conduct CDS transactions." The affidavit also explained that following the interception of "phone calls involving CDS distribution," surveillance officers "have observed [defendant] exit[ing the St. Georges Avenue] residence and . . . meet[ing] people for the purpose of a CDS transaction." At the hearing, Detective Sidorski explained that on March 20, 2014, officers intercepted telephone calls and text messages between defendant and an individual during which arrangements were made for the individual to travel to the St. Georges Avenue address to purchase two bricks[2] of heroin from defendant. The individual was then observed arriving at the address, at which time defendant exited the residence through its front door and entered the individual's vehicle to conduct a CDS transaction.

The affidavit also asserted defendant's girlfriend resided at the St. Georges Avenue address and described the girlfriend's active participation in defendant's drug distribution network. The affidavit did not indicate how the officers knew the girlfriend resided there, although a footnote indicated "[t]he individuals named herein were identified through various means," the records of which the

---

[2] Sidorski explained that a brick of heroin consists of fifty bags of the substance.

affidavit "incorporate[s] by reference herein." At the initial proceeding on defendant's suppression motion, however, defendant, through his counsel, acknowledged that his girlfriend resided at the St. Georges Avenue address.

The affidavit contained a description of the St. Georges Avenue residence to be searched as follows:

> The residence is described as a two story residence with a dormer atop the second floor. The roof is tan in color. The front is covered in a beige vinyl siding. Facing the street, the dormer has a single window, the second floor has two windows, and the first floor has two windows and a front door, which is white in color. There is a front porch on the first level. There are approximately six steps leading up the front porch from the street level, with a black railing on both sides of the steps.

In addition to the street address of the residence, the search warrant also described the place to be searched as:

> St. Georges Avenue, Edison, NJ is more specifically described as a two story residence with a dormer atop the second floor. The roof is tan in color. The front is covered in beige vinyl siding. Facing the street, the dormer has a single window, the second floor has two windows, and the first floor has two windows, and a front door, which is white in color. There is a front porch on the first level. There are approximately six steps leading up to [the] front porch from the street level, with a black railing on both sides of the steps.

Investigator Wilson submitted an application to amend a wiretap order on March 31, 2018, after intercepted communications led investigators to believe

defendant "currently possesses firearms," stores them at his St. Georges Avenue address, "and can and will provide firearms" to individuals likely to use them in violent confrontations with others.

Detective Sidorski testified that during the surveillance of the residence prior to the search, investigators observed defendant utilizing the front and back entrances of the house. There were two mailboxes on the front porch, but they were not apparent unless one stood on the porch, and investigators did not get that near to the house, for fear of compromising the investigation, and never saw the mailboxes. Sidorski testified neither he nor the team he supervised were aware the residence had more than one water meter before the search, though he acknowledged seeing two meters on the side of the house after execution of the warrant, and they did not consider "getting tax records or utility records to confirm that it was . . . a single . . . family residence" because "[t]here was no indication . . . that it was a multi-family dwelling."

Sidorski was not present when the search warrant was executed, but was on site following execution of the warrant. According to Sidorski, when the officers entered the residence to execute the search warrant, they assumed it was a single family home and searched the first floor, where defendant and his

girlfriend resided. Officers went to the second floor, learned it was "a separate home, separate dwelling" and did not search it.

The court determined the totality of the circumstances described in the affidavit established probable cause to search the St. Georges Avenue residence. The court found it "troubling" the warrant stated an incorrect town and police did not discover the house was a multi-unit residential home before the search commenced. However, the court found the errors did not negate the probable cause for the search warrant and "the warrant provided police with enough facts and specificity that the location could be reasonably ascertained to be the correct location in order to execute the search."

Defendant pleaded guilty to third-degree conspiracy to distribute a controlled substance; third-degree possession of heroin with intent to distribute; fourth-degree possession of a defaced firearm; second-degree certain persons not to have weapons; and a violation of probation.[3] On June 30, 2017, the court imposed an aggregate eight-year sentence with five years of parole ineligibility. Defendant appealed from the court's denial of the suppression motion. R. 3:5-7(d).

---

[3] The charge for which defendant was resentenced on the violation of probation is not identified, nor is the judgment of conviction on the violation of probation included in the record on appeal.

A-5031-16T4

Defendant offers the following arguments for our consideration:

POINT I

THE MOTION TO SUPPRESS EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE SPECIFIC TO THE HOME THAT WAS SEARCHED.

POINT II

THE MOTION TO SUPPRESS EVIDENCE SHOULD HAVE BEEN GRANTED BECAUSE THE SEARCH WARRANT VIOLATED THE CONSTITUTIONAL PARTICULARLITY [sic] REQUIREMENT BY FAILING TO INDICATE THE CORRECT ADDRESS AND THAT THERE WERE MULTIPLE UNITS, AND BECAUSE THE OFFICERS UNREASONABLY FAILED TO DISCONTINUE THE SEARCH ONCE THEY DISCOVERED THERE WERE MULTIPLE UNITS.

A. The Warrant Was Invalid Because It Listed the Wrong Town and There Were No Grounds to Cure that Error.

B. The Warrant Was Invalid Because It Did Not Identify Which of the Two Units in the Multi-Family Home Was to Be Searched.

C. The Motion to Suppress Should Have Been Granted Because the Officers Should Have Stopped the Search Once They Discovered There Were Multiple Units.

A-5031-16T4

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted). The "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We should disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, 192 N.J. at 244 (quoting Johnson, 42 N.J. at 162). However, we do not defer to the trial court's legal interpretations. State v. Gamble, 218 N.J. 412, 425 (2014).

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted). "[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause

to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

We "accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." State v. Boone, 232 N.J. 417, 427 (2017) (alteration in original) (quoting Jones, 179 N.J. at 388). Our role is to determine whether the warrant application presented sufficient evidence for a finding of probable cause to search the location for the items sought. State v. Chippero, 201 N.J. 14, 32 (2009).

"The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Boone, 232 N.J. at 426 (quoting Jones, 179 N.J. at 388). The probable cause inquiry requires courts to "make a practical, common sense determination whether, given all of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)); see also Jones, 179 N.J. 389 (noting that a court must consider the

"the totality of the circumstances" in determining if there is probable cause for a search). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Boone, 232 N.J. at 427 (alterations in original) (quoting Marshall, 199 N.J. at 611).

A.

Defendant first argues the search warrant was not supported by probable cause because the supporting affidavit contained only three pieces of information regarding the St. Georges Avenue residence, none of which sufficiently linked the residence to defendant's alleged commission of CDS related offenses: (1) the assertion it was his girlfriend's residence and defendant's part-time residence; (2) a drug distribution network participant drove defendant "home" to the address on March 16, 2014; and (3) on one occasion investigators saw defendant exit the residence and meet individuals for a CDS transaction.

We agree with defendant's claim the court could not properly rely on the affidavit's representation that defendant's girlfriend resided at the address to

support probable cause to search the St. Georges Avenue residence.[4]  The affidavit describes defendant's girlfriend's actions as a participant in the distribution of the CDS, but does not include any evidence establishing where defendant's girlfriend resides, that the St. Georges Avenue address was her residence or how the police knew the residence was allegedly hers.  See Boone, 232 N.J. at 429-31.  The footnote in the affidavit, indicating that the various participants in the alleged CDS distribution network were "identified" through various sources, does not provide any information concerning defendant's girlfriend's residence.  The affidavit therefore did not support a finding of probable cause based on the assertion that defendant's girlfriend resided at the St. Georges Avenue residence.  Ibid.

In any event, based on the totality of the other circumstances presented in the supporting affidavit, there are facts supporting "a practical, common sense determination" that "there [was] a fair probability that contraband or evidence

---

[4]  We appreciate that defendant did not raise the argument before the motion court and that his counsel stated during the initial proceeding that defendant's girlfriend resided at the St. Georges Avenue address.  Although we generally do not consider arguments that are not first presented before the trial court, State v. Robinson, 200 N.J. 1, 20 (2009), we consider defendant's contention that the affidavit did not establish his girlfriend resided at the address because the appeal requires our assessment of the court's finding of probable cause based on the totality of the circumstances presented in the supporting affidavit.

of a crime" would be found at the St. Georges Avenue address.[5] Marshall, 199 N.J. at 610 (quoting O'Neal, 190 N.J. at 612). The affidavit revealed ongoing distribution of CDS to numerous individuals on a daily basis commencing March 11, 2014 and continuing through March 26, 2014. The affidavit detailed the involvement of defendant and twenty-three other individuals' involvement in the sale, distribution, purchase and distribution of CDS.

The affidavit also reveals that the arrangements for the sales, the distribution, and the delivery of the CDS occurred at numerous locations. During a March 16, 2014 exchange of text messages between defendant and Namoya concerning a suspected CDS transaction, defendant requested a ride to his "home," made arrangements for Namoya to transport him there, was transported by Namoya to the St. Georges Avenue residence and was observed entering the residence. Thus, unlike in Boone, where there was no evidence establishing that the place to be searched was the defendant's residence, Boone, 232 N.J. at 429-30, here there was direct evidence the St. Georges address was

---

[5] The State argues for the first time on appeal that the search of the St. Georges Avenue address was "also sustainable under the inevitable discovery doctrine" because "police . . . developed probable cause of new gun crimes . . . within hours of [the judge's] issuance of the search warrant." We generally decline to consider arguments raised for the first time on appeal, see Robinson, 200 N.J. at 20, and note that it is otherwise unnecessary to consider the State's belated contention because the affidavit otherwise established probable cause.

defendant's residence: his declaration the residence was his "home." Moreover, the affidavit explained defendant made arrangements for a CDS transaction during an intercepted phone call, and was then observed leaving the St. Georges Avenue residence and meeting with people for the purpose of a CDS transaction.

These circumstances detailed in the affidavit support the search warrant judge's determination there was a fair probability defendant resided at the St. Georges Avenue address and evidence of a crime would be found there. The affidavit showed defendant was involved in an ongoing and large scale CDS distribution network. See, e.g., United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000) ("In the case of drug dealers, a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside."). Moreover, defendant identified the residence as his home and the affidavit showed he committed an offense while in the residence: he made arrangements for a CDS transaction from the residence and left the home to complete the CDS transaction. "We accord substantial deference to a trial court's determination that there was probable cause to issue a warrant," Marshall, 199 N.J. at 612, and are satisfied the affidavit provided "specific evidence" demonstrating probable cause that there was evidence related to the commission of defendant's alleged crimes in the residence, Boone, 232 N.J. at

15

431. Defendant failed to sustain his burden of demonstrating otherwise. <u>Jones</u>, 179 N.J. at 388.

We find no merit in defendant's contention the affidavit did not allege sufficient facts concerning the dates of the criminal activity related to the St. Georges Avenue address to permit a finding there was probable cause to believe "the law was being violated at the time the warrant issued." <u>State v. Blaurock</u>, 143 N.J. Super. 476, 479 (App. Div. 1976). The affidavit describes defendant's extensive daily criminal activity occurring over the eighteen-day period immediately prior to the search warrant application, and explains defendant arranged a CDS transaction from the residence as part of the ongoing CDS distribution network and left the residence to complete the CDS transaction during that time.[6] Again, the totality of those circumstances supports the court's "practical, common sense determination . . . given all of the circumstances," <u>Marshall</u>, 199 N.J. at 610 (quoting <u>O'Neal</u>, 190 N.J. at 612), that such activity remained ongoing at the St. Georges Avenue residence, as well as the other various locations at which defendant engaged in criminal activity, at the time the warrant issued. <u>See, e.g.</u>, <u>Blaurock</u>, 143 N.J. Super. at 479 (noting that

---

[6] As noted, it was established during the <u>Franks</u> hearing that defendant arranged the CDS transaction from the residence and left the residence to complete it on March 20, 2014, eight days before the search warrant application.

"[t]ogether with the element of time . . . the nature of the unlawful activity" must be considered in determining if there is probable cause to believe there is evidence of that activity at the time the search warrant is sought (quoting <u>United States v. Johnson</u>, 461 F.2d 285, 287 (10th Cir. 1972))).

B.

Defendant next contends the search warrant's erroneous reference to Edison as the town in which the St. Georges Avenue residence was located violates the requirement that a warrant "particularly describ[e] the place to be searched." <u>U.S. Const.</u> amend. IV. The particularity requirement "mandates that 'the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" <u>Marshall</u>, 199 N.J. at 611 (quoting <u>Steele v. United States</u>, 267 U.S. 498, 503 (1925)).

The purpose of the "particularity requirement [is] to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications . . . ." <u>Ibid.</u> (quoting <u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987)). Although "a search warrant must describe the premises to be searched with reasonable accuracy, pin-point precision is not demanded." <u>State v. Wright</u>, 61 N.J. 146, 149 (1972).

17

That a search warrant includes the wrong address of the premises to be searched does not necessarily run afoul of the particularity requirement or render the ensuing search of the premises at the correct address invalid. "The test is not whether the description is completely accurate in every detail but rather whether it furnishes a sufficient basis for identification of the property so that it is recognizable from other adjoining and neighboring properties." State v. Daniels, 46 N.J. 428, 437 (1966). Analysis of the search's validity "must be approached on a common sense basis rather than upon a super technical basis requiring elaborate specificity." Ibid.

In State v. Daniels, the search warrant affidavit explained that a reliable confidential informant reported, and surveillance confirmed, an illegal lottery operation located on premises with an address of "31 Avon Place" in a large municipality. Id. at 431-32. The affidavit further described the premises as "a small candy and ice cream store." Id. at 431. The court found probable cause to search the premises and issued a warrant for "a confectionery store known and designated as No. 31 Avon Place" in the municipality. Id. at 432. The premises were searched, but it was subsequently revealed that the store was located at "35 Avon Place." Ibid.

The defendant filed a suppression motion arguing, as defendant does here, that the search was unlawful because "neither the affidavit nor the search warrant particularly describe[d] the place to be" searched. Id. at 435. The trial court granted the motion, and the Supreme Court subsequently granted the State's motion for leave to appeal. Id. at 433. The Supreme Court found there was probable cause for the issuance of a warrant, no evidence the officers "desired to obtain a general warrant under the guise of a specific warrant," id. at 437, the officers complied with the requirement of seeking a warrant from a judge, and the error in the designation of the address "was rationally explained," id. at 438.

The Court further noted the affidavit and warrant included a description of the premises (i.e., a "confectionery store") separate from the address, and there was no evidence other properties fitting the description were "likely to be confused with the intended premises." Ibid. The Court also relied on the evidence showing that an officer could have, with reasonable effort, determined the premises to be searched and that officers engaged in the search "had been engaged in the surveillance and therefore knew the specific property for which the warrant was issued." Ibid. The Court explained that it did:

> not mean to be understood to say generally that the
> personal knowledge of the officer executing the

warrant, of the place intended to be searched, could cure a vitally deficient description, but . . . where . . . the error is at the worst innocent and technical, and there is additional descriptive language which properly identifies the place, such knowledge is an element to be considered.

[Ibid.]

The Court reversed the suppression order, concluding that "[i]n the light of the foregoing, the error [concerning the address] fades into comparative insignificance." Id. at 439.

Similarly, in State v. Bisaccia, the search warrant affidavit contained a detailed description of the building to be searched as "a one story frame building with a store," "a large sign over the entrance saying Coca Cola Toys—Candy Coca Cola" and a front porch featuring a "look-out" at the address of "371 10th Street" in a designated municipality. 58 N.J. 586, 588 (1971). The court found probable cause to search the building and issued a warrant authorizing the search of "the premises located at 371 10th Street, a one story frame building" in the municipality. Ibid. The officer who was the affiant for the affidavit and had previously surveilled the premises described in the affidavit executed the warrant. Ibid. However, it was later discovered that the correct number of the building was 375, not 371. Ibid.

The defendant filed a suppression motion and argued the warrant was defective because it listed the incorrect address of the building. Ibid. The Supreme Court reversed the trial court's suppression order, finding the building intended to be searched "was unmistakably described in the affidavit," and "[n]o other structure in the vicinity matched that description." Ibid. The Court found the warrant, combined with the affidavit's description of the property and the executing officer's "prior knowledge as to the place intended in the warrant," id. at 593, whereby he "knew the judge who issued the warrant intended the building he had amply described in his affidavit," was sufficient to uphold the search, id. at 592-93.

Measured against the principles relied on by the Court in Daniels and Bisaccia, we are satisfied the court correctly determined the error in the identification of the town in which the St. Georges Avenue address was located did not violate the particularity requirement. The officers applied for a warrant for the search and there is no evidence the officers sought a general search warrant under the pretense of a specific warrant. To be sure, the officers were inattentive by erroneously referencing the town in which the St. Georges Avenue premises were located, but Sidorski explained the mistake was the result of nothing more than a typographical error, and there is no evidence to the contrary.

21

In addition, the affidavit and warrant included a detailed physical description of the premises that matched the physical description of the residence that was searched. And, the premises searched not only matched the physical description included in the affidavit and warrant, the premises also had the identical house number and St. Georges Avenue street address listed in the affidavit and warrant. There is no evidence that any other property in any other town or location shared the identical physical characteristics of the premises and its street number and name. Thus, the premises searched could not be confused with any other residence.

Because the error here was "at the worst innocent and technical," it is appropriate to also consider the knowledge of the officers. Daniels, 46 N.J. at 438. The affidavit states that the search was to be conducted by the officers who actually conducted the surveillance, who "knew the specific property for which the warrant was issued." Ibid.; see also Wright, 61 N.J. at 149 (explaining that an officer's "own knowledge is a very relevant factor" in determining whether the particularity requirement's purpose—preventing entry into property that officers have "no authority to invade"—is violated). Thus, we are convinced, as the Court was in Bisaccia, that the State did not violate the particularity requirement because "[t]he place searched was undeniably the place as to which

probable cause had been made out," "was in fact the place the warrant was meant to describe," and the "error" did not "taint the justice of the search." 58 N.J. at 592.

C.

Defendant also argues the search warrant violated the constitutional particularity requirement because it did not identify which of the two units in the residence the officers were authorized to search. Defendant contends the officers should have known the residence contained two units prior to applying for the search warrant and should have abandoned the search after determining the residence contained two units when they executed the search warrant.

Application of the particularity requirement is problematic where criminal activity is suspected in a multi-unit structure. In Marshall, the Court found a search warrant violated the particularity requirement because it did not define the particular apartment to be searched, but instead authorized the executing officers to determine the defendant's residential unit while executing the warrant. 199 N.J. at 613. The Court found that the thrust of the particularity requirement is to avoid an apartment-building-wide search, and "when a multi-unit building is involved, the affidavit in support of the search warrant must exclude those units for which police do not have probable cause." Id. at 611.

The court determined it was unconstitutional to leave the determination as to which of the units would be searched to the executing officers. Id. at 616-17.

In Marshall, the Court also discussed its decision in Wright, where it did not find a constitutional violation even though the affidavit did not indicate there were three apartments on the top floor of the premises. Id. at 614-15. The Court explained that in Wright the affidavit limited the request to search to the apartment "that was in fact occupied by the defendant," and the evidence showed the police were familiar with the defendant's apartment because they had searched it several months before. Id. at 615 (quoting Wright, 61 N.J. at 149).

The Court further discussed our decision in State v. Ratushny, 82 N.J. Super. 499 (App. Div. 1964). Marshall, 199 N.J. at 624. In Ratushny, we affirmed the suppression of evidence seized during the search of an apartment in a four-unit apartment building, "hold[ing] that where the premises reasonably believed to house illegal activity are known or reasonably should have been known by the police to be premises being utilized for the occupancy of more than one family, the search warrant must contain as specific a description of the particular area to be searched as the nature of the circumstances reasonably permit." 82 N.J. Super. at 506. We further explained that a "general description" of the premises without regard to a particular unit "will pass muster only when

24

it appears that a more specific description could not be obtained without endangering the secrecy of surveillance or the efficacy of an arrest, or there are equivalent justifying circumstances." Id. at 507. The Court in Marshall, however, explained that the general description referenced in Ratushny is not acceptable where "the nature of the circumstances either permitted the police to discover the specific apartment unit prior to obtaining the search warrant, or at minimum, would have allowed the police to return to the court to amplify the affidavit with the precise unit prior to executing the warrant." 199 N.J. at 617.

Here, the circumstances are factually different than those presented in Marshall, Wright and Ratushny because the officers were unaware the residence contained two units when the search warrant affidavit was submitted to the court and prior to the execution of the warrant. A warrant violates the particularity requirement when it "authorizes the search of an entire building when cause is shown for searching only one apartment." State v. Sheehan, 217 N.J. Super. 20, 28 (App. Div. 1987). However, "[a]n exception to this rule exists where the multiple-unit character of the premises is not known or is not reasonably apparent to the officer applying for and executing the warrant." Id. at 28 n.1; accord State v. Schumann, 156 N.J. Super. 563, 566-67 (App. Div. 1978); State v. Hendricks, 145 N.J. Super. 27, 33 (App. Div. 1976).

In Maryland v. Garrison, the United States Supreme Court considered whether officers must particularize their requests to exclude apartments for which they have no probable cause from the scope of the requested warrant where they are unaware there are separate units in the area to be searched. 480 U.S. at 85. The Court explained that officers must make "a reasonable effort to ascertain and identify the place intended to be searched" such that their conclusions can be deemed reasonable. Id. at 88. However, "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." Id. at 85. The court must assess the warrant "on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate." Ibid.

Here, the trial court did not clearly state its findings regarding whether the officers made reasonable efforts to determine if the residence contained more than one unit, but the uncontroverted evidence established they were unaware the residence contained more than one unit, there was no reason known to the officers suggesting that it did, and the only indicia the residence might contain more than one unit—the mailboxes and meters—were not discovered as a result of concerns that gaining close proximity to the residence would compromise the ongoing surveillance and investigation. Thus, we cannot conclude the officers

acted unreasonably in failing to conduct any additional investigation to determine if the residence included more than one unit; their surveillance and observations did not suggest any reason to do so and, in fact, provided a reasonable basis for the decision no further investigation was required.

That is not to say we endorse the officers' failure to undertake a more thorough investigation to determine if the residence contained more than one unit. Where law enforcement is not certain a residence contains only one unit, the more diligent and suggested practice is to investigate easily accessible utility, tax and other records to ensure a search warrant is limited to the particular unit for which there is probable cause to search. Indeed, a judge presented with a search warrant request for a residence is well-advised to consider whether an investigation concerning the number of units has been undertaken. For the reasons stated, however, we do not find the officers' failure to conduct such an investigation under the circumstances presented here was unreasonable.

In Garrison, the Court found officers legally entered a building's third-floor living quarters, which contained two apartments, because they reasonably believed the floor contained only one unit. Id. at 86. The same is true here. Moreover, Sidorski explained the officers had no reason to suspect the house

contained multiple units, the actual search was limited to the unit in which defendant resided and, although the officers went to the second unit, they did not search the unit because they discovered others resided there. Under similar circumstances in Garrison, the Court found a search did not violate either the particularity requirement or the constitutional prohibition against unreasonable searches and seizures. Id. at 87-89. We make the same finding here.

Finally, defendant argues police should have ceased searching the St. Georges Avenue residence upon discovering it contained multiple units. We reject this argument for two reasons. First, defendant did not raise this argument below, and it neither goes to the jurisdiction of the trial court nor is a matter of great public interest, so we will not consider it. See Robinson, 200 N.J. at 20.

In addition, this argument fails because the United States Supreme Court has already addressed this question in Garrison. The Court found "we must judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted." Garrison, 480 U.S. at 85. The Court had "no difficulty concluding that the officers' entry into the third-floor common area," not knowing it contained two apartments, "was legal." Id. at 86. The officers recognized "they were required to discontinue the search of [Garrison's] apartment," because he and his home were not the target of the warrant, "as soon

as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant." Id. at 87. The Court found the officers "properly responded to the command contained in a valid warrant even if the warrant is interpreted as authorizing a search limited to [the target's] apartment rather than the entire third floor." Id. at 88. The Court held "the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." Ibid.

We are presented with almost identical circumstances. Officers entered the St. Georges Avenue residence with no knowledge of a second unit and discontinued their search of the second floor "as soon as they discovered that there were two separate units." Id. at 87. Thus, they "properly responded to the command contained in a valid warrant" and conducted "a search limited to" defendant's apartment, rather than the entire building. Id. at 88. The search of defendant's unit was therefore valid.

We affirm the trial court's denial of defendant's motion to suppress.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5031-16T4